Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
Erin C. Witkow (SBN 216994)
ew@witkowlaw.com
Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel:   818.296.9508
Fax:  818.296.9510

Attorneys for Defendant
LIN'S WAHA INTERNATIONAL CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCM GROUP USA INC., <br><br> Plaintiff, <br><br> vs. <br><br> LIN'S WAHA INTERNATIONAL CORP, a New York corporation; and DOES 1-10. <br><br> Defendant. | Case No. 2:19-cv-08917 SB (KSx) <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT; OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR MONETARY DAMAGES; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing**: <br><br> Date:  March 5, 2021 <br> Time:  8:30 a.m. <br> Ctrm:  6C |

**TO PLAINTIFF AND ITS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on **March 5, 2021** at 8:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 6C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 6C, 6th Floor, Los Angeles, California 90012, Defendant Lin's Waha International Corp. ("Defendant"), will and hereby does move this Court for summary judgment against Plaintiff OCM Group USA, Inc. ("Plaintiff") on the ground that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on Counts One and Two of Plaintiff's Complaint for (a) trademark infringement under the Lanham Act, and (b) unfair competition under state or federal common law.  Alternatively, Defendant moves this Court for summary judgment on Plaintiff's claim for monetary damages for trademark infringement.

The grounds for Plaintiff's Motion as to Plaintiff's Count One for trademark infringement under the Lanham Act is that Plaintiff's claim is barred by the First Sale Doctrine.  Namely, there is no dispute that the products at issue sold by Defendant are *genuine* products bearing authentic trademarks, and are manufactured in China by the same entities that manufacture Plaintiff's products bearing the trademarks at issue. Because the products sold by Defendant are genuine products derived from the identical source as Plaintiff's products, there can be no likelihood of consumer confusion as to the source of Defendant's products, which is an essential element of trademark infringement. Under the First Sale Doctrine, Plaintiff cannot look to trademark law to control the downstream distribution of genuine products, regardless of Plaintiff's alleged status as an exclusive distributor of those products. Because summary judgment is appropriate on its claim for trademark infringement, summary judgment is also appropriate on Plaintiff's claim for unfair competition, which is predicated on its failed trademark claim.

Defendant alternatively moves for summary judgment on Plaintiff's claim for monetary damages for trademark infringement on the grounds that Plaintiff cannot

provide evidence sufficient to create a triable issue of fact with respect to either Lin's Waha's profits or its own actual damages; thus summary judgment on both is appropriate.  Specifically, Plaintiff cannot create a genuine issue of fact with respect to the required showing of willfulness; thus, summary judgment on its claim for disgorgement of Defendant's profits is warranted.  Additionally, Plaintiff cannot create a genuine issue of fact with respect to Plaintiff's actual damages, as it has no competent evidence of any actual loss and/or that Plaintiff and Defendant directly compete.

This motion is made following the conference of counsel under L.R. 7.3, which took place on December 17, 2020.

This motion is based on this Notice of Motion and Motion, and the Memorandum of Points and Authorities filed herewith, on the Statement of Uncontroverted Facts and Conclusions of Law, and the Declarations of Qixuing Lin, Linpan Deng and Brandon J. Witkow, together with the exhibits thereto, all filed concurrently herewith, on all pleadings and papers on file in this action and upon such other matters as may be presented to the Court at the time of the hearing.


Dated: January 28, 2021                    Respectfully submitted,

                                           witkow | baskin

                                           By: */s/* Brandon J. Witkow
                                           Brandon J. Witkow

                                           Attorneys for Defendant
                                           LIN'S WAHA INTERNATIONAL
                                           CORP.

MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND .................................................................2

    A.     Lin's Waha's Sale of Genuine Asian Food and Beverage Products in the United States ....................................................................................2

    B.     OCM's Allegations of Trademark Infringement ..................................3

    C.     The Products at Issue Sold by Lin's Waha Were Genuine and Were Not Materially Different Than Those Sold by OCM ............................4

    D.     Lin's Waha Ceased Distribution of the Products at Issue Following OCM's Cease and Desist Demands .....................................................7

    E.     OCM Has Failed to Produce Any Evidence Supporting its Claim for Damages for Trademark Infringement ................................................7

III.   SUMMARY JUDGMENT/ADJUDICATION IS WARRANTED..............10

IV.    LEGAL ARGUMENT ...........................................................................11

    A.     OCM's Trademark Infringement Claim is Barred By the First Sale Doctrine ...........................................................................................11

    B.     Given That OCM Cannot Prevail on its Claim for Trademark Infringement, Summary Judgment is Also Warranted on its Claim for Common Law Unfair Competition ...................................................18

    C.     To the Extent Plaintiff's Claims Survive, Summary Judgment Should Be Granted Against OCM On Its Claim for Monetary Damages........19

        1.     There is No Triable Issue of Fact With Respect to Willfulness and, Therefore, OCM Cannot Recover Lin's Waha's Profits ..19

        2.     There is No Triable Issue of Fact With Respect to OCM's Actual Damages ........................................................................22

V.     CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Adaptive Marketing LLC v. Girard Gibbs LLP,*
  2009 WL 8464168 (C.D. Cal., Oct. 9, 2009) ....................................................19

*Amer. Auto. Assoc. ("AAA") of Northern Calif., Nevada & Utah v. General*
  *Motors LLC,*
  367 F.Supp.3d 1072 (N.D. Cal. 2019).......................................20, 21, 22, 23, 24

*Beltronics USA, Inc. v. Midwest Inventory Dist., LLC,*
  562 F.3d 1067 (10th Cir. 2009) .............................................................11, 12, 13

*Blau v. YMI Jeanswear, Inc.,*
  2004 WL 5313967 (C.D. Cal. Jan. 2, 2004)........................................22, 24, 25

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.,*
  174 F.3d 1036 (9th Cir. 1999) ...................................................................19

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)..............................................................................10, 11

*Cleary v. News Corp.,*
  30 F.3d 1255 (9th Cir. 1994) ...................................................................18

*Comm. for Idaho's High Desert, Inc. v. Yost,*
  92 F.3d 814 (9th Cir. 1996) ....................................................................23

*Conversive , Inc. v. Conversagent, Inc.,*
  433 F.Supp.2d 1079 (C.D. Cal. 2006) ...................................................19

*Coty Inc. v. Cosmopolitan Cosmetics Inc.,*
  432 F.Supp.3d 345 (S.D.N.Y. 2020) ....................................................16

*Davidoff & CIE, S.A. v. PLD Int'l Corp.,*
  263 F.3d 1297 (11th Cir. 2001) .........................................................11, 12, 13

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992) ................................................................11

*Fair Wind Sailing, Inc. v. Dempster,*
  764 F.3d 303 (3d Cir. 2014) ...................................................................22

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,*
  952 F.2d 44 (3d Cir. 1991) ......................................................................22

*Gasaway v. Northwestern Mut. Life Ins. Co.,*
    26 F.3d 957 (9th Cir. 1994) .................................................................. 11

*George Basch Co., Inc. v. Blue Coral, Inc.,*
    968 F.2d 1532 (2d Cir. 1992) .............................................................. 20

*Glow Indus., Inc. v. Lopez,*
    252 F. Supp. 2d 962 (C.D. Cal. 2002) ................................................ 18

*Govino LLC v. Goverre, Inc.,*
    2018 WL 7348849 (C.D. Cal. Nov. 20, 2018) .................................... 20

*Graham Webb Intern. Ltd. Partnership v. Emporium Drug Mart, Inc.,*
    916 F.Supp.909 (E.D. Ark. 1995) ....................................................... 16

*Groupion, LLC v. Groupon, Inc.,*
    826 F.Supp.2d 1156 (N.D. Cal. 2011) ..................................... 21, 22, 24

*Henry v. Chloride, Inc.,*
    809 F.2d 1334 (8th Cir. 1987) ............................................................ 13

*Hydramedia Corp. v. Hydra Media Grp. Inc.,*
    392 F.App'x 522 (9th Cir. 2010) ......................................................... 20

*Iberia Foods Corp. v. Romero,*
    150 F.3d 298 (3d Cir. 1998) .......................................... 12, 13, 16, 17

*JIPC Management, Inc. v. Incredible Pizza Co., Inc.,*
    2009 WL 10671438 (C.D. Cal. June 24, 2009) .................................. 25

*Lindy Pen Co. v. Bic Pen Corp.,*
    982 F.2d 1400 (9th Cir. 1993) ............................................................ 20

*Luxottica Group, S.p.A. v. Eye Story, Inc.,*
    2020 WL 2404913 (C.D. Cal. May 11, 2020) .................................... 18

*Mallard Creek Industries, Inc. v. Morgan,*
    56 Cal. App.4th 426 (1997) ................................................................ 18

*McClaran v. Plastic Idus., Inc.,*
    97 F.3d 347 (9th Cir. 1996) ................................................................ 23

*Moa Moa, Inc. v. New Moa Collection,*
    2019 WL 8112468 (C.D. Cal. Aug. 30, 2019) .................................... 22

**MOTION FOR SUMMARY JUDGMENT**

*Monte Carlo Shirt, Inc. v. Daewoo Intern. (America) Corp.,*
    707 F.2d 1054 (9th Cir. 1983) ....................................................................12, 15

*NEC Elecs. V. CAL Circuit Abco,*
    810 F.2d 1506 (9th Cir. 1987) ...........................................................11, 12, 14

*Original Appalachian Artworks v. Granada Elec.,*
    816 F.2d 68 (2d Cir. 1987) ........................................................................15, 18

*Polymer Tech. Corp. v. Mimran,*
    37 F.3d 74 (2d Cir. 1994) ...................................................................................12

*San Miguel Pure Foods Co., Inc. v. Ramar Inter. Corp.,*
    625 F.App'x 322 (9th Cir. 2015)................................................................20, 22

*Sansi North America, LLC v. LG Elec. USA, Inc.,*
    2019 WL 8168069 (C.D. Cal. Nov. 14, 2019) .........................................19, 20

*Sebastian Int'l, Inc. v. Longs Drug Stroes Corp.,*
    53 F.3d 1073 (9th Cir. 1995) ........................................................12, 14, 18

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,*
    982 F.2d 633 (1st Cir. 1992)........................................................................13, 15

*Spin Master Ltd. v. Zobmondo Entm't, LLC,*
    944 F.Supp.2d 830 (C.D. Cal. 2012) .................................................................20

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,*
    875 F.3d 426 (9th Cir. 2017) .............................................................................19

*Strike It Rich, Inc. v. Joseph Schlitz Brewing Co.,*
    505 F.Supp.89 (D.D.C. 1980)............................................................................23

*Summit Tech., Inc. v. High-Line Med. Instr. Co., Inc.*
    922 F.Supp.299 (C.D. Cal. 1996)............................................11, 12, 13, 14, 15

*tagTrends, Inc. v. Nordstrom, Inc.,*
    2014 WL 12561604 (C.D. Cal. Sept. 30, 2014) ................................................24

*The Apollo theater Found., Inc. v. Western Inter. Syndication,*
    2005 WL 1041141 (S.D.N.Y. 2005) ..................................................................24

*U.S. v. Giles,*
    213 F.3d 1247 (10th Cir. 2000) .........................................................................12

**MOTION FOR SUMMARY JUDGMENT**

## STATUTES

15 U.S.C. § 1114 .......................................................................................11

15 U.S.C. § 1117(a) ..............................................................................19, 20

Cal. Bus. & Prof. Code § 17200 ..........................................................18, 19

Fed. R. civ. P. 12(b)(6) ............................................................................14

Fed. R. Civ. P. § 26(e) ..............................................................................21

Fed. R. Civ. P. § 56 ..................................................................................10

Fed. R. Civ. P. § 56(e) ..............................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this trademark infringement action, Plaintiff OCM Group USA, Inc. ("OCM") claims that Defendant Lin's Waha International Corp. ("Lin's Waha") violated the Lanham Act and committed unfair competition by selling *genuine* goods bearing *authentic* trademarks which were manufactured by and purchased from the *exact same manufacturers* from which OCM purchased the products it sells.  As explained herein, both OCM and Lin's Waha purchase various Asian beverage products from two manufacturers in China, which neither party alters prior to their sale in the United States. Indeed, OCM concedes that Lin's Waha's products are genuine and from the same manufacturer as its products, and OCM has not identified any material differences between the products it sells that would be relevant to a consumer's purchasing decision.  Instead, OCM claims that because it is the purported "exclusive distributor" of these products in the United States, any sale by Lin's Waha of these products constitutes trademark infringement.  That simply is not the law.

To the contrary, the Ninth Circuit and this Court have made clear that when a party sells *genuine goods* in the United States – even without approval from the trademark owner – there can be no likelihood of consumer confusion and any claims of trademark infringement are defeated under the First Sale Doctrine.  Because there is no question that Lin's Waha's goods are genuine, it cannot be liable for trademark infringement or unfair competition and summary judgment is appropriate.

To the extent this Court is not inclined to dismiss OCM's claims in their entirety, summary judgment on OCM's claims for lost profits and actual damages is warranted. First, under Ninth Circuit law, disgorgement of profits is only warranted when there has been a finding of willfulness.  Here, OCM has not and cannot point to any evidence establishing willfulness by Lin's Waha. In fact, the only "evidence" it has produced is its single cease and desist letter with which Lin's Waha complied promptly, despite its well-founded belief that its sale of genuine goods was

permissible under the law.  Second, OCM has produced no competent evidence of any actual damages (i.e., loss of revenue, loss of customers, loss of goodwill) as a result of Lin's Waha's actions.  Instead, OCM makes the baseless and nonsensical assumption that it would have sold the exact same amount of products that Lin's Waha sold, despite the fact that OCM does not even operate in *nine* of the states in which Lin's Waha sold the products at issue, and there is very little geographic overlap in the only *two* states in which both parties sold their products.  Once again, OCM ignores patently applicable caselaw requiring a trademark plaintiff to prove some actual loss before the court will award actual damages.  Thus, summary judgement on OCM's claim for actual damages is also appropriate.

## II.    FACTUAL BACKGROUND

### A. Lin's Waha's Sale of Genuine Asian Food and Beverage Products in the United States

Lin's Waha began operations in July 2011 after identifying a need for the importation of genuine Asian food products to local and family-owned markets serving Asian-American communities in the United States. [*See* Declaration of Xiuqing Lin ("Lin Decl."), at ¶ 3.]  The customers of these markets typically are immigrants and second/third generation families from China and other Asian countries, familiar with authentic food brands from their youth and/or while living or working in these countries and which are not carried in traditional U.S. supermarkets. [Lin Decl., ¶ 3.]  Currently, Lin's Waha imports approximately 600 genuine food and beverage products purchased from food manufacturers and food distributors in China, Malaysia, Taiwan, and Thailand. [Statement of Uncontroverted Facts ("SUF") 1].  With respect to Chinese food and beverage products, Lin's Waha purchases such products through its wholly-owned affiliate in China, Fujian Lins HengFa International Trade Co., Ltd. ("Fujian"), which then exports these products to Lin's Waha in the United States.  [SUF 2]. When Lin's Waha receives these genuine products they are packaged and sealed, and Lin's Waha makes no changes or

alterations to either the contents, packaging, or label of these products prior to their sale in the United States, other than to add an English-language nutritional label sticker to the packaging, as required by the U.S. Food, Drug and Cosmetic Act ("FDA Act"). [SUF 3]. Lin's Waha has sold its products to approximately 450 markets in 34 different states—primarily local, family-owned markets based in Asian-American communities. [SUF 4].

**B. OCM's Allegations of Trademark Infringement**

OCM alleges that it is "generally in the merchandising business related to grocery products" and it "makes purchases from suppliers and sells to retailers, grocery stores or supermarkets in [sic] U.S." [SUF 5].  It further alleges that it is the "exclusive distributor" and "exclusive US licensee" of "certain brands' [sic] of grocery products", including: XIANGPIAOPIAO, MECO, and LAN FONG YUEN. [SUF 6].  OCM alleges that these "brands" are the subject of four separate trademark registrations with the United States Patent and Trademark Office ("USPTO"): for XIANG PIAO PIAO issued to XiangPiaoPiao Food Co., Ltd. ("XPP") in Classes 29 & 32, for MECO issued to XPP in Classes 29 & 40, for MECO issued to XPP in Class 30, and for LANG FONG YUEN issued to Lan Fong Yuen Food Co., Ltd. ("Lan Fong Yuen") in Classes 29 & 32 (collectively, "Trademarks at Issue").  [SUF 7].   OCM produced a document that purports to be an "exclusive distribution" agreement with XPP, which is effective as of July 1, 2018.  [SUF 8].

OCM asserts two claims against Lin's Waha for trademark infringement and common law unfair competition, alleging that Lin's Waha "impermissibly makes, uses, imports, sells and/or offers to sell" the following products:

- XIANGPIAOPIAO Teas: Dasheen [Taro] Milk Tea, Strawberry Milk Tea, Wheat Milk Tea, Original Milk Tea flavors.

- MECO Teas: Kumquat & Lemon, Thai Lime, Peach & Pink Grapefruit & Milk Tea flavors.

- LAN FONG YUEN Milk Tea (hereafter referred to as the "Products at Issue").

[SUF 9].  OCM alleges that it sent Lin's Waha a cease and desist letter on July 19, 2019, and that Lin's Waha purportedly "did not respond, nor did it attempt to avoid further infringing acts." [SUF 31].  The Complaint alleges that OCM has "lost over $250,000 and the loss is ongoing." [SUF 35].

### C. The Products at Issue Sold by Lin's Waha Were Genuine and Were Not Materially Different Than Those Sold By OCM

As discussed above, Lin's Waha purchases Chinese food and beverage products through its wholly-owned affiliate in China, Fujian, which then exports these Chinese food products to Lin's Waha in the United States.  [SUF 2].  Among those Chinese food and beverage products purchased by Fujian are the Products at Issue. Namely, on multiple occasions in 2018 and early 2019, Fujian purchased the Products at Issue from two Chinese distributors, Fuqing Ni Biyun Trade Co., Ltd. ("Fuqing") and Guangzhou Futong Trade Co., Ltd. ("Guangzhou"). [SUF 10].  Both Fuqing and Guangzhou are distributors of the Products at Issue for the two manufacturers of the products, XPP and Lan Fong Yuen, which are also the registrants of the Trademarks at Issue. [SUF 11].  The Products at Issue purchased by Fujian on behalf of Lin's Waha were genuine XPP and Lan Fong Yuen products, bearing genuine XIANGPIAOPIAO, MECO, and LAN FONG YUEN Marks.  [SUF 12].  When Fujian purchases these products, they are sealed, and Fujian in no way alters the contents, packaging or labeling of these products prior to their export to Lin's Waha in the United States. [SUF 13].  The Products at Issue purchased by Fujian and exported to Lin's Waha for sale in the United States are identical in appearance to those same products sold by the manufacturers in China.  [SUF 14].  When Lin's Waha receives the Products at Issue from Fujian in the United States, it also makes no changes to the contents of the products, its packaging or to its labeling, with the exception of adding an English-language sticker to the label as required by the FDA Act (as the ingredient label is otherwise all in Chinese).  [SUF 15].  This is because, as discussed above, the consumers of these products in the United States can read

Chinese, are familiar with the Products at Issue, and aware of what they are purchasing. [SUF 16].

Not only are the Products at Issue sold by Lin's Waha in the United States identical to those same products sold by XPP and Lan Fong Yuen in China, but they are also identical to those Products at Issue sold by OCM in the United States. [SUF 17]. The alleged "Distributor Agreement" between OCM and XPP, produced by OCM in this action, makes clear that OCM purchases products manufactured by XPP in China in accordance with Chinese quality standards, ***just like Lin's Waha did***. [SUF 18 (Dist. Agrmt., section IV, no. 5 ("Party A's [XPP] products are manufactured in accordance with the quality standards of the PRC [People's Republic of China] and can only be sold after passing inspections")]. Just as Lin's Waha does not make any changes to the sealed products manufactured by XPP and Lan Fong Yuen in China, OCM also admits that the products it sells come "directly from XPP in China," and it does not "change any content or packaging of the branded products at issue." [SUF 19]. Thus, it is undisputed that OCM and Lin's Waha are selling the same genuine Products at Issue in the United States. [SUF 26]. Like Lin's Waha, OCM also adds an English-language sticker to the label of the Products at Issue as required by the FDA Act. [SUF 20]. The fact that there are no differences in the labeling or appearance of the Products at Issue sold by Lin's Waha and OCM can be seen, for example, by comparing the products as they are sold, for example [SUF 21]:[1]

| **OCM Product** | **Lin's Waha Product** |
|---|---|
|  | |

---

[1] Attached as Exh. 9 to the Witkow Decl. is a Chart Showing a Side-by-Side Comparison of the Products at Issue sold by XPP/Lan Fong Yuen in China, on the one hand, and the OCM and Lin's Waha's products sold in the United States, on the other hand.



Indeed, when asked in discovery to produce any documents "reflecting or evidencing any differences between the packaging and/or contents of the products sold by [OCM] and products sold by [Lin's Waha] that [OCM] contend[s] infringe the Trademarks at Issue," OCM failed to identify any specific differences. [SUF 22]. Instead, OCM responded that its "contention of infringement is based upon the facts that OCM obtained the exclusive distributorship (in U.S.) of the brands at issue since 7/1/2018" and, as such, Lin's Waha's mere "distribution of the products constituted infringement." [SUF 23].  While OCM also generally responded that its branded products are manufactured by XPP for resale in the U.S. and Lin's Waha's products are "produced/packaged for Chinese domestic consumption," OCM did not identify any purported differences between the Chinese and U.S. versions of the Products at Issue.  [SUF 24].

Indeed, Lin's Waha is unaware of any incidents of actual consumer confusion between the Products at Issue that it sells in the United States and those sold by OCM, nor has OCM identified any incidents of consumer confusion with respect to the Products at Issue.  [SUF 25 & 26 ("OCM does not contend that consumers were misled as to the products being counterfeit")].  To the contrary, when asked in discovery to produce documents reflecting any actual consumer confusion between the Products at Issue sold by OCM and Lin's Waha, OCM failed to produce any documents and *admitted* that Lin's Waha "purchased/sold ***genuine*** products" (emphasis added). [SUF 26 ("It appears that LW purchased/sold genuine products during the time when OCM has the exclusivity")].

### D. Lin's Waha Ceased Distribution of the Products at Issue Following OCM's Cease and Desist Demands

As stated above, on multiple occasions in 2018 and early 2019, Fujian purchased the Products at Issue from two Chinese distributors, Fuqing and Guangzhou on behalf of Lin's Waha. [SUF 10]. Lin's Waha began selling the Products at Issue in the United States on July 2, 2018. [SUF 27]. While Lin's Waha was aware that the Products at Issue were being sold by other distributors in the United States, it was unaware of any alleged exclusive distributor agreement between the manufacturers of the Products at Issue (XPP and Lan Fong Yuen) and any distributors in the United States. [SUF 28]. Indeed, as explained above, OCM did not even enter into the purported Distribution Agreement with XPP until July 1, 2018. [SUF 8]. In addition, it has always been Lin's Waha's understanding that its sale of genuine products manufactured by XPP and Lan Fong Yuen does not violate trademark rights. [SUF 29]. Lin's Waha has never intended to deceive or confuse consumers through the sale of the Products at Issue, and has not received any reports of consumer confusion given that it is selling genuine products. [SUF 30].

In or about July 19, 2019, Lin's Waha received a letter from OCM's attorney requesting that Lin's Waha cease and desist from selling or offering to sell the nine Products at Issue. [SUF 31]. While Lin's Waha believed its sale of the Products at Issue to be lawful, in response to this letter, Lin's Waha voluntarily stopped selling the Products at Issue. [SUF 32]. Lin's Waha's last sale of the Products at Issue in the United States was on October 28, 2019, reflecting a short three-month period in which Lin's Waha sold off its limited remaining inventory. [SUF 33]. Indeed, when asked in discovery to produce any documents evidencing purported willful infringement, OCM identified *only* its July 19, 2019 cease and desist letter and vaguely claimed that Lin's Waha "continued to infringe violate [sic] the trademark's and OCM's exclusive right." [SUF 34].

### E. OCM Has Failed to Produce Any Evidence Supporting its Claim for Damages for Trademark Infringement.

7

In its Complaint, OCM alleges, with no explanation or supporting facts, that it has "estimated that it lost over $250,000 and the lost [sic] is ongoing." [SUF 35]. However, OCM's allegation regarding an "estimated $250,000" is **_directly contradicted_** by its Federal Rule of Civil Procedure 26(a) disclosure as to its "computation of each category of damages" claimed by OCM. Specifically, in its "Supplemental Disclosure," OCM disclosed that it was seeking "damages in the form of lost profit [sic] as shown herein in OCM-0001 through OCM-0006, based upon the sales quantity of the nine (9) items sold by Lin's Waha." [SUF 36]. Plaintiff's Supplemental Disclosure further claims an amount of purported "lost profit damages" of $82,666.59, which is based on Lin's Waha's total sales volume, but **_OCM's_** profit margin, **_not Lin's Waha's_** profit margin. [SUF 37].

Namely, Lin's Waha produced a sales document demonstrating that it sold a total of 5,361 units of the nine products at issue in 2018 and 2019, and generated profits on those products of a total of $24,846.73. [SUF 38]. OCM claims that it is entitled to base its lost profits damages calculation on Lin's Waha's sales, but because it obtained a better profit margin on the nine Products at Issue, it's total amount of lost profits are $82,666.59, as opposed to Lin's Waha's actual profits on the same amount of sales of $24,846.73. [SUF 39].

Finally, as support for its damages calculation, OCM's Supplemental Disclosure identified OCM's "true and correct purchases and sales invoices for the 9 items at issue," as documents produced as bates numbers OCM-0003 through OCM-0006. [SUF 40]. These purchases and sales invoices reflect the following sales of the Products at Issue by OCM:

- Total sales of $54.00 for XPP Meco Milk Tea and XPP Lan Fong Yuen Milk Tea on 9/19/2018 to Greatwall Supermarket-Monterey Park, CA;

- Total sales of $88.00 for XPP Milk Tea Strawberry, XPP Milk Tea Taro, XPP Milk Tea Barley, XPP Milk Tea Original on 5/2/2020 to Eugene Asian Market, Eugene, Oregon;

MOTION FOR SUMMARY JUDGMENT

- Total sales of $30.00 for Lan Fong Yuen Milk Tea on 1/8/2020 to Caryee Group, Lake Forest, California;

- Total sales of $60.00 for XPP Meco Peach & Pink Grapefruit Tea, XPP Meco Thai Lime Tea on 2/17/19 to 528 Club, [unknown], California. [SUF 41].

Despite being requested to produce all invoices supporting its sales of the Products at Issue, these four invoices are the only sales invoices OCM has produced in discovery, and OCM has never further supplemented its Rule 26(a) Disclosures. [SUF 42]. Lin's Waha has never sold the Products at Issue to the four customers identified above [SUF 43]. Indeed, as reflected in sales information produced by Lin's Waha, during the 15 month time period that Lin's Waha sold the Products at Issue in the United States, the majority of its sales of the Products at Issue were *outside* of California. [SUF 44]. Lin's Waha sold the Products at Issue to only **one customer** in California (in Cupertino, California, which is in Northern California, unlike OCM's customers in Southern California). [SUF 45].

During discovery, OCM also produced two form, fill-in-the-blank "Declarations", which purport to be signed by the "CEO" of two supermarkets in Flushing, New York: Skyfoods and Gold City Supermarket. [SUF 46]. These "Declarations" state that these two supermarkets have purchased products manufactured by XPP, including MECO, XIANGPIAOPIAO, and LAN FONG YUEN branded products "exclusively from OCM" since September 2018. [SUF 47]. Despite the statements set forth in these Declarations, OCM has never produced invoices reflecting any sales to Skyfoods or Gold City Supermarket, including the particular products sold or the volume of any such sales. [SUF 48]. The sales information produced by Lin's Waha does indicate that Lin's Waha sold a minimal amount of the Products at Issue to these two supermarkets during the relevant time period, i.e., $3,480 total sales to SkyFoods and $700 to Gold City Market. [SUF 49]. Aside from the "Declarations" purportedly signed by these two supermarkets, OCM has produced no evidence of any overlap between its customers and Lin's Waha's

customers. [SUF 50].  Nor has OCM produced any evidence of any sales it has lost from any current or potential customers as a result of Lin's Waha's sales.  [SUF 51]. Moreover, OCM has produced **no evidence** whatsoever that it has penetrated the market in the vast majority of states in which Lin's Waha sold the Products at Issue, namely: Michigan, Pennsylvania, Indiana, Massachusetts, Alabama, Florida, Illinois, New Jersey, Nebraska, Ohio, Wisconsin, Kansas, Georgia, and Louisiana. [SUF 52].

Finally, when asked in discovery for all documents supporting its original allegation of estimated damages of $250,000, OCM produced no documents, instead only responding that "[a]ny of the sales of the branded products by [Lin's Waha] after 7/1/2018 caused loss of revenue and goodwill to [OCM]. [OCM] currently has no expert opinion(s) to evaluate loss of goodwill and revenue." [SUF 53].  To date, other than conclusory assertions, OCM has produced no documents reflecting any actual loss of revenue and/or goodwill as a result of Lin's Waha's alleged actions. [SUF 54 Witkow Decl., ¶ 8].[2]

## III.   SUMMARY JUDGMENT/ADJUDICATION IS WARRANTED.

Summary judgment is appropriate where the record shows no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Rule 56 "mandates the entry of summary judgment . . . against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings and evidence that demonstrate the absence of a genuine issue of material fact.  *Id.* at 322. If the nonmovant bears the

---

[2]   OCM has produced three other short generic Excel spreadsheets, without any supporting invoices or other backup, that purport to reflect sales of the products at issue to seven (7) other customers; however, these unsupported spreadsheets reflect sales either outside the relevant infringement period (July 2018 – October 2019) and/or relate to supermarkets where Lin's Waha has no sales. Further, they do not evidence any loss of sales as a result of Lin's Waha's alleged actions.

10

witkow | baskin

burden of proof at trial, as is the case with OCM's claims, the moving party's burden on summary judgment is discharged by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In response, the party opposing summary judgment must be able to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 323-24; Fed. R. Civ. P. 56(e). Where the responding party has nothing but conclusory and speculative allegations with no competent relevant evidence to back them up, summary judgment is appropriate. *See Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (defendant entitled to summary judgment where plaintiff did no more than argue that defendants' evidence should be disregarded).

## IV. LEGAL ARGUMENT

### A. OCM's Trademark Infringement Claim is Barred By the First Sale Doctrine.

An action for trademark infringement under § 32 of the Lanham Act (15 U.S.C. § 1114) arises when "[a]ny person ... without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... in connection with such use [which] is likely to cause confusion." *Summit Tech., Inc. v. High-Line Med. Instr. Co., Inc.* 922 F. Supp. 299, 307 (C.D. Cal. 1996). The "touchstone" of liability under § 32 is, of course, the "likelihood of confusion as to the source of the goods." *Id.* (*citing E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir.1992); *see also Beltronics USA, Inc. v. Midwest Inventory Dist., LLC* 562 F.3d 1067, 1071 (10th Cir. 2009) ("the central inquiry in a trademark infringement case is the likelihood of consumer confusion").

Those who resell genuine trademarked products are generally ***not liable*** for trademark infringement. *See NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987); *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F. 3d 1297, 1301 (11th Cir. 2001); *Summit Tech.,* 922 F. Supp. at 307 ("[a]n action will not arise where the

11

goods being sold are genuine goods bearing a true mark") (*citing Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994)). "Additionally, trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *Summit Tech.,* 922 F. Supp. at 307 (*citing NEC,* 810 F.2d at 1509). "The reason is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily ***does not exist*** when a genuine article bearing a true mark is sold." *NEC,* 810 F.2d at 1509 (emphasis added); *see also U.S. v. Giles,* 213 F.3d 1247, 1252 (10th Cir. 2000) ("'[T]he purpose of trademark law is ... to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute.'"); *Iberia Foods Corp. v. Romero,* 150 F.3d 298, 303 (3d Cir. 1998) ("[a]lthough consumers may be unaware of the precise avenues that a given product has traveled on its way to the supermarket shelf, the authentic trademark on the alleged infringer's goods is an accurate indicator of their nature and quality").

Accordingly, under the First Sale Doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Summit Tech.*, 922 F. Supp. at 309 (*citing Sebastian Int'l, Inc. v. Longs Drug Stores Corp*., 53 F.3d1073, 1074 (9th Cir. 1995). It logically follows that the first sale doctrine is not applicable "when an alleged infringer sells trademarked goods that are ***materially different*** than those sold by the trademark owner." *Id.* (*citing Davidoff*, 263 F.3d at 1302) (emphasis added); *Monte Carlo Shirt, Inc. v. Daewoo Intern. (America) Corp.*, 707 F.2d 1054, 1057 (9th Cir. 1983) (no likelihood of confusion resulting from unauthorized sale of genuine Korean shirts in United States that had in no way been altered or changed from date of manufacture to date of sale). A materially different product is not genuine and may generate consumer confusion about the source and the quality of the trademarked product. *Beltronics USA,* 562 F.3d at 1072. Importantly, however, "not all differences are material." *Id*. Some differences between products "prove so minimal that consumers who purchase the

alleged infringer's goods get precisely what they believed they were purchasing [and] consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales." *Beltronics USA,* 562 F.3d at 1073 (*citing Iberia Foods Corp.*, 150 F.3d at 303). A guiding principle in evaluating whether a difference between two products bearing the same trademark is material is whether the difference "confuses consumers and impinges on the ... trademark holder's goodwill." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992). For this reason, the materiality analysis must be undertaken "on a case-by-case basis," and must include "an examination of the products and markets at issue." *Beltronics USA,* 562 F.3d at 1073 (*citing Nestle,* 982 F.2d at 641). "Although no mechanical process exists for determining the threshold for materiality, a difference is material if 'consumers [would] consider [it] relevant to a decision about whether to purchase a product.'" *Beltronics*, 562 F.3d at 1073 (*citing Davidoff*, 263 F.3d at 1302). For example, courts will find a "material difference" if the goods are "'seconds' of inferior quality" or have been "taint[ed] ... by mishandling." *Henry v. Chloride, Inc*., 809 F.2d 1334, 1350 (8th Cir. 1987).

In *Summit Tech,* the U.S. manufacturer of medical laser systems, Summit, alleged trademark infringement against a defendant that re-imported for use in the U.S., genuine, used Summit systems manufactured in the U.S., but intended for ***foreign use only***. 922 F. Supp. at 302. Summit conceded that the re-imported foreign systems that the defendant sold in the United States without its authorization bore the genuine "Summit" trademark and had not been altered in any way between manufacture and sale. *Id.* at 308. However, Summit argued that the re-imported foreign Summit systems were not "genuine" Summit products because they *differed "materially"* from the systems intended for U.S. use, including the fact that they were not approved by the FDA and not subject to the same quality controls. *Id.* Summit argued that consumers would be misled into believing that Summit authorized the sale and use of these foreign systems in the United States. *Id.*

13

**MOTION FOR SUMMARY JUDGMENT**

The district court disagreed with Summit, dismissing its trademark claims under Fed. R. Civ. P. 12(b)(6), finding that notwithstanding the differences between the foreign and domestic systems, the "essential fact remains that based on the allegations in the Complaint, the re-imported [foreign] laser systems are Summit products, manufactured and sold by Summit itself. Thus, consumers will not be confused as to whether the re-imported laser systems are 'Summit' systems–they are. There is no 'likelihood of confusion as to the source of the goods,' which, based on Plaintiff's allegations, is Summit." *Id.* at 308 (citations omitted). Thus, *Summit* concluded that under the Ninth Circuit's holding in *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. 1995), "Summit simply cannot use trademark law to control the downstream distribution of products that Summit *itself* manufactured and sold. The mere fact that Summit sold its goods abroad rather than domestically does not create an exception to the 'first sale' doctrine." *Id.* at 309 (emphasis in original). As the Ninth Circuit held, if Summit chooses to "manufacture different goods for different countries, *it cannot look to the Lanham Act to protect its domestic market*." *Id.* (emphasis added) (*citing NEC*, 810 F.2d at 1511).

 This Court's ruling in *Summit* applies squarely to the instant case. Here, like Summit, the Products at Issue sold by OCM and Lin's Waha are manufactured in China by the exact same entities: XPP and Lang Fong Yuen. [SUF 8, 10-12, 18-19]. They bear the same, genuine trademarks registered by these entities, and they are not altered in any way between manufacture and sale in the U.S. [SUF 13-15, 17-21]. Thus, all of the Products at Issue – those sold by OCM *and* Lin's Waha – are *genuine products*. OCM *admits* that Lin's Waha sells "genuine" products, and it admits that both parties purchase those products from the manufacturers in China. [SUF 19, 23, 26 ("It appears that LW purchased/sold genuine products during the time when OCM has the exclusivity")]. There can be no likelihood of confusion as to the source of these products, because the source is the same: XPP and Lang Fong Yuen in China. Because Lin's Waha is selling the same genuine products – manufactured by the exact

14

same entities – in the United States that OCM is selling, such actions are protected under the First Sale Doctrine and cannot constitute trademark infringement. *Monte Carlo*, 707 F.2d at 1057 (no likelihood of confusion resulting from unauthorized sale of genuine Korean shirts in United States that had in no way been altered or changed from date of manufacture to date of sale); *Summit Tech,* 922 F. Supp. at 309 ("Summit simply cannot use trademark law to control the downstream distribution of products that Summit *itself* manufactured and sold").  To the extent that OCM claims that their products somehow differ from those sold by Lin's Waha because they are manufactured for consumption in the United States as opposed to consumption in China, any such argument is entirely irrelevant to the likelihood of confusion analysis, as explained above.  *Id.* (holding that if Summit chooses to "***manufacture different goods for different countries***, it cannot look to the Lanham Act to protect its domestic market") (emphasis added).  Thus, even assuming XPP and Lang Fong Yuen sold different goods in different markets, the "first sale" rule still applies to defeat any claims of trademark infringement.  *Id.*

This Court distinguished the facts in *Summit Tech.* from those in *Nestle* and *Original Appalachian*, noting that unlike those cases, *Summit Tech.* was "*not* a 'gray market' goods case." *Id.*  Specifically:

> [u]nlike the typical 'gray market' situation, all the 'Summit' products at issue ***are manufactured and distributed by Summit itself***.  The new and used Summit products are thus not 'parallel' products — ***they are all 'genuine' Summit-made products***.  Accordingly, there is no danger that consumers are likely to be confused as to the *source* of the Summit laser systems – the main concern of trademark law.  On the face of the Complaint, Summit admits that all of the laser systems in question are manufactured and distributed by Summit *itself,* not by any foreign manufacturer . . . they are all genuine Summit manufactured products – none are 'gray market' goods. 922 F. Supp. at 310 (emphasis added).

Just as in *Summit*, ***all of the products at issue***, those sold by OCM and those sold by Lin's Waha, are manufactured and distributed by the ***same manufacturers*** (XPP and

Lang Fong Yuen) who are the registrants of the trademarks at issue; thus, they are all "genuine" and there is no likelihood of confusion.  [SUF 7, 8, 10, 13-15, 17-21, 26].

While the undisputed facts demonstrate that the Products at Issue derive from the same manufacturer, even if they did not, Lin's Waha would still not be liable for trademark infringement because there are no "material differences" between the Products at Issue.  Even when the products derive from different manufacturers (which is *not* the case here), there can be no likelihood of consumer confusion when any differences between the products are *not* relevant to the consumer's decision about whether to purchase the product.  *See e.g., Iberia,* 150 F.3d at 306 (directing district court to enter summary judgment for defendant on trademark infringement claim based on finding of "no material difference" between products at issue); *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, 432 F. Supp. 3d 345, 351-52 (S.D.N.Y. 2020) (granting motion to dismiss trademark infringement claim given lack of allegations of "material differences" between products at issue); *Graham Webb Intern. Ltd. Partnership v. Emporium Drug Mart, Inc.*, 916 F. Supp. 909, 916 (E.D. Ark. 1995) (granting summary judgment for defendant after finding no "material difference between the products sufficient to create a likelihood of consumer confusion").

For example, *Iberia* concerned the sale of *Mistolin* brand household cleaners, which were manufactured exclusively in Puerto Rico by Mistolin Caribe.  150 F.3d at 299. The plaintiff, Iberia, entered into an agreement with Mistolin Caribe to serve as the exclusive distributor of *Mistolin* products in the United States.  *Id.* at 300.  The defendant, Rol-Rom Foods, purchased *Mistolin* products on the open market in Puerto Rico and then sold them in New York and New Jersey in competition with Iberia.  *Id.* Iberia then initiated a trademark infringement action against Rol-Rom, and both parties moved for summary judgment.  *Id.*  The Third Circuit concluded that there was no "material difference between the Mistolin sold by Iberia and that sold by Rol-Rom," thus, "the Mistolin sold by Rol-Rom is 'genuine' and [] Iberia's attempt to use § 32 of the Lanham Act to block Rol-Rom's sales must fail. Because buyers of Rol-

Rom's *Mistolin* get precisely what they believe they are purchasing…the goodwill associated with *Mistolin* products is not harmed by Rol-Rom's sales." *Id.* at 306.

Just as in *Iberia,* there are no "material differences" between the Products at Issue in this case sold by Lin's Waha and OCM.  While OCM claims to be the "exclusive distributor" of XIANGPAIOPAIO, MECO, and LANG FONG YUEN products in the United States – as Iberia was for *Mistolin,* Lin's Waha purchased *genuine* XIANGPAIOPAIO, MECO, and LANG FONG YUEN products on the open market in China – as Rol-Rom did in Puerto Rico.  [SUF 10-12].  As explained in Section II.C above, there are no "material differences" between the Products at Issue, and purchasers of Lin's Waha's XIANGPAIOPAIO, MECO, and LANG FONG YUEN products get "precisely what they believe they are purchasing." [SUF 12-15]. Indeed, when asked in discovery to produce any documents "reflecting or evidencing any differences between the packaging and/or contents of the products sold by [OCM] and products sold by [Lin's Waha] that [OCM] contend[s] infringe the Trademarks at Issue," OCM failed to identify any specific differences. [SUF 22]. Instead, OCM responded only that its "contention of infringement is based upon the facts that OCM obtained the exclusive distributorship (in U.S.) of the brands at issue since 7/1/2018" and, as such, Lin's Waha's "distribution of the products constituted infringement." [SUF 23].  However, regardless of OCM's alleged status as an "exclusive distributor," if there is no likelihood of consumer confusion (which there is not here), there is no trademark infringement. While OCM also responded that its branded products are manufactured by XPP for resale in the U.S. and Lin's Waha's products are "produced/packaged for Chinese domestic consumption", OCM did not identify any purported differences between the Chinese and U.S. versions.  [SUF 24].

Again, this is ***not*** a situation where the parties' respective Products at Issue are manufactured by different entities in different parts of the world and, as a result differ in quality and/or appearance, i.e., "gray market goods".  For example, in *Nestle,* the First Circuit found infringement because the ***Venezuelan*** manufactured chocolates

differed materially from the "Perugina" chocolates manufactured in **Italy** and authorized for the U.S. market.  *See Nestle*, 982 F.2d 633, 643-44 (1ˢᵗ Cir. 1992). Similarly, in *Original Appalachian Artworks v. Granada Elec.*, 816 F.2d 68 (2d Cir. 1987), the Second Circuit found infringement when **Spanish** made "Cabbage Patch" dolls were imported into the United States and differed materially from their **U.S.** made counterparts.  Here, it is undisputed that the Products at Issue sold by Lin's Waha are "genuine" products manufactured by XPP and Lang Fong Yuen in China, just like OCM's products [SUF 26]; thus, there can be no likelihood of confusion and OCM's claim for trademark infringement fails as a matter of law.

**B.     Given That OCM Cannot Prevail on its Claim for Trademark Infringement, Summary Judgment is Also Warranted on its Claim for Common Law Unfair Competition.**

"The standard for Lanham Act trademark infringement is the same as for Lanham Act unfair competition and California state claims for trademark infringement and unfair competition." *Luxottica Group, S.p.A. v. Eye Story, Inc.,* 2020 WL 2404913, at *3 (C.D. Cal. May 11, 2020); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 (C.D. Cal. 2002) ("The elements of [California] state claims for trademark infringement and unfair competition are substantially similar to those of comparable federal claims"); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) ("state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App.4th 426, 438 (1997) ("The ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks").

Here, the Complaint generically alleges a claim for "Unfair Competition" in addition to a trademark infringement claim.   Whether this claim is premised on the federal Lanham Act or California state law it is clear that the claim expressly relies on OCM's allegations of trademark infringement.  [SUF 55]  As discussed in section

18

III.A, *infra*, Count One for trademark infringement should be dismissed as a matter of law because Lin's Waha sale of genuine goods is protected under the First Sale Doctrine. Accordingly, because summary judgment is warranted on Plaintiff's trademark infringement claim, it is also justified on Plaintiff's unfair competition claims, which is expressly predicated on purported trademark infringement. *See Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp.2d 1079, 1093-94 (C.D. Cal. 2006) (granting summary judgment on federal unfair competition and California common law unfair competition and 17200 claims as federal trademark claim fails) (*citing Brookfield Comm., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1044 (9th Cir. 1999); *Adaptive Marketing LLC v. Girard Gibbs LLP*, 2009 WL 8464168, at *5 (C.D. Cal. Oct. 9, 2009) (dismissing collateral California state law unfair competition claims as federal trademark claim was dismissed and analysis is the same).

## C.    To the Extent Plaintiff's Claims Survive, Summary Judgment Should Be Granted Against OCM On Its Claim for Monetary Damages.

Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in both trademark infringement and unfair competition claims, and provides for an award of Defendant's profits, any damages sustained by Plaintiff, and the costs of the action.   An award of damages or profits "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).   Here, as explained below, OCM cannot provide evidence sufficient to create a triable issue of fact with respect to either Lin's Waha's profits or its own actual damages; thus summary judgment on the issue of any monetary remedy is appropriate.

### 1.   There is No Triable Issue of Fact With Respect to Willfulness and, Therefore, OCM Cannot Recover Lin's Waha's Profits.

In the Ninth Circuit, a plaintiff seeking disgorgement of a defendant's profits in a trademark infringement case must demonstrate that the defendant willfully infringed the mark.  *See e.g., Sansi North America, LLC v. LG Elec. USA, Inc.,* 2019 WL 8168069, at *6–10 (C.D. Cal. Nov. 14, 2019) (*citing Stone Creek, Inc. v. Omnia*

19

*Italian Design, Inc*., 875 F.3d 426, 440 (9th Cir. 2017); *see also George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir. 1992) (to recover profits under § 1117(a), the "plaintiff must prove that an infringer acted with willful deception"). "Willfulness requires some showing of a 'connection between a defendant's awareness of its competitors and its actions at those competitors' expense.'" *Id.* "[E]quity dictates that the plaintiff must show that the defendant's infringing acts were accompanied by some form of intent." *Sansi,* 2019 WL 8168069, at *6 (*citing Stone Creek,* 875 F.3d at 440; *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405–06 (9th Cir. 1993)). "Willful infringement carries a connotation of deliberate intent to deceive." *Lindy Pen Co*., 982 F.2d at 1406. "Courts generally apply forceful labels such as 'deliberate,' false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Id.* "Only deliberate conduct will satisfy this standard; mere negligence will not." *Govino LLC v. Goverre, Inc.*, 2018 WL 7348849, at *5 (C.D. Cal. Nov. 20, 2018).  Further, "[i]nfringement is not willful if the party reasonably believes that its usage of a trademark is not barred by law." *See San Miguel Pure Foods Co., Inc. v. Ramar Inter. Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015).

Courts have granted summary judgment against a plaintiff's request for disgorgement when the plaintiff has failed to raise a genuine dispute about willfulness.  *Sansi,* 2019 WL 8168069, at *7 (*citing Hydramedia Corp. v. Hydra Media Grp. Inc*., 392 F. App'x 522, 523 (9th Cir. 2010) (district court did not err in granting summary judgment as to willfulness and profits where the defendant was not trading off plaintiff's name and "there was no evidence that it sought to mislead consumers or usurp any goodwill associated with Plaintiff's mark"); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 849 (C.D. Cal. 2012) (summary judgment appropriate because plaintiffs had not raised a genuine dispute over willfulness for disgorgement purposes, because no evidence of "an intent to trade on Plaintiffs' established name"); *Amer. Auto. Assoc. ("AAA") of Northern Calif., Nevada & Utah v. General Motors LLC,* 367 F.Supp.3d 1072, 1102–1108 (N.D. Cal.

2019) (finding plaintiff "fails to demonstrate the existence of a genuine issue of material fact as to willfulness", granting defendant's motion for summary judgment on willfulness, and holding plaintiff "cannot disgorge [defendant's] profits").

Here, as explained above, Plaintiff's Rule 26(e) Supplemental Disclosure identifies that OCM seeks monetary damages in the form of "lost profits" based on Lin's Waha's total sales. [SUF 36].  While Plaintiff seeks to apply its own "Cost of Goods Sold," claiming that its own profit margin would have been greater than Lin's Waha's, any attempt by OCM to disgorge Lin's Waha's profits (or an amount even greater than Lin's Waha's profits) must fail, as OCM cannot create a triable issue of fact as to willfulness, as required under Ninth Circuit law. Namely, in discovery, OCM made clear that its claim of willfulness is based *solely* on the following single allegation: "Plaintiff sent notice letter in July, 2019. [Lin's Waha] continued to infringe violate [sic] the trademarks and OCM's exclusive right." [SUF 34].

This allegation is patently insufficient to create a triable issue of fact as to willfulness. First, even if this baseless allegation were supported by any actual evidence – which it is not – "the failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith." *Groupion, LLC v. Groupon, Inc.*, 826 F.Supp.2d 1156, 1165 (N.D. Cal. 2011); *see also AAA,* 367 F.Supp.3d at 1104.  Second, it is undisputed that after receiving the July 19, 2019 cease and desist letter, Lin's Waha terminated the purchase of additional products, and sold off its remaining inventory by October 2019, only three months after receiving the cease and desist letter.  [SUF 32-33]. Further, Lin's Waha has provided evidence that while Lin's Waha was aware that the Products at Issue were being sold by other distributors in the United States, it was unaware of any alleged exclusive distributor agreement between the manufacturers of the Products at Issue (XPP and Lan Fong Yuen) and any distributors in the United States.  [SUF 28]. OCM entered into the purported exclusive distribution agreement only one day before Lin's Waha began selling the Products at Issue in the United

**MOTION FOR SUMMARY JUDGMENT**

States. [SUF 8, 23 & 27].  Lin's Waha has never intended to deceive or confuse consumers through the sale of the Products at Issue, and has not received any reports of consumer confusion given that it is selling genuine products manufactured and sold by XPP and Lan Fong Yuen.  [SUF 26, 30]. In addition, it has always been Lin's Waha's understanding that its sale of genuine products manufactured by XPP and Lan Fong Yuen does not violate any trademark rights on the basis of the First Sale Doctrine [SUF 29]. *San Miguel,* 625 F. App'x at 325 ("[i]nfringement is not willful if the party reasonably believes that its usage of a trademark is not barred by law"). Put simply, OCM has not and cannot provide evidence of any intent on the part of Lin's Waha that would create a triable issue of fact on the issue of willfulness; thus, summary judgment is warranted and OCM cannot recover damages in the form of disgorgement of Lin's Waha's profits.[3] *Moa Moa, Inc. v. New Moa Collection*,  2019 WL 8112468, at *12–13 (C.D. Cal. Aug. 30, 2019) (granting summary judgment on willfulness and disgorgement of profits based on lack of evidence provided by plaintiff); *Groupion, LLC,* 859 F.Supp.2d at 1081–82 (granting summary judgment on plaintiff's request for defendant's profits where plaintiff failed to submit any evidence of willful infringement); *Blau,* 2004 WL 5313967, at *6 (granting summary judgment on profits when plaintiff did not provide "sufficient evidence to raise a triable issue of fact as to whether [d]efendants willfully infringed [p]laintiff's mark"), *aff'd*, 129 F. App'x 385 (9th Cir. 2005).

### 2. There is No Triable Issue of Fact With Respect to OCM's Actual Damages.

---

[3] Even when the First Sale Doctrine does not apply, which it does here, it is difficult to establish willfulness when the products at issue bear legitimate trademarks.  *See e.g., Ferrero U.S.A., Inc. v. Ozak Trading, Inc*., 952 F.2d 44, 48-50 (3d Cir. 1991), *abrogated on other grounds by Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314, 318 (3d Cir. 2014) (holding that the court was "not presented with a case where a defendant has imitated the plaintiff's trademark in order to free ride on the good will built up by the plaintiff"—rather, the products "legitimately bore the trademarks" of plaintiff's affiliate and "were affixed with the approval of that ... affiliate").

22

witkow|baskin

To recover actual damages in a trademark infringement case, a plaintiff must prove "the fact and the amount of damage" *AAA,* 367 F.Supp.3d at 1105. "Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Id.* Compensatory damages must be established with "reasonable certainty" and not be based on speculation or conjecture. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996). The Ninth Circuit has recognized that claims for actual damages under the Lanham Act may be properly disposed of on summary judgment. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (district court was correct to grant summary judgment on damages in trademark case because plaintiff failed to create a genuine issue of material fact as to its actual damages); *see also Strike It Rich, Inc. v. Joseph Schlitz Brewing Co.*, 505 F. Supp. 89, 91 (D.D.C. 1980) (finding that defendant's partial MSJ should be granted in service mark infringement case when the plaintiff repeatedly "failed to provide this Court or defendant with any proof of damage that could be tested or studied").

Here, OCM has failed to identify any measurable loss to establish actual damages as a result of Lin's Waha's alleged infringement. OCM has not provided ***any*** evidence of lost sales or lost customers as a result of Lin's Waha's sales of the Products at Issue. Indeed, when asked in discovery for all documents supporting its original allegation of estimated damages of $250,000, OCM produced no documents, instead providing only the vague response that "[a]ny of the sales of the branded products by [Lin's Waha] after 7/1/2018 caused loss of revenue and goodwill to [OCM]. [OCM] currently has no expert opinion(s) to evaluate loss of goodwill and revenue." [SUF 53]. Aside from this conclusory statement, OCM has produced no evidence of loss of revenue or goodwill [SUF 54], and unsupported allegations of "loss of revenue" or "loss of goodwill" are insufficient to create a triable issue of fact.

As explained above, "[c]ompensatory damages must be established with 'reasonable certainty' and not be based on speculation or conjecture." *AAA,* 367

F.Supp.3d at 1105.  A conclusory assertion or "belief" that a plaintiff has been harmed by the defendant's alleged infringement is simply not sufficient to avoid summary judgment.  *Id.* at 1107 (rejecting "conclusory statements" regarding damage that were "not supported by detailed facts or evidentiary support").  Here, OCM has provided nothing more than "conclusory" claims regarding its purported "loss of revenue and goodwill"; thus, summary judgment on actual damages is warranted.  *See e.g., Blau*, 2004 WL 5313967, at *4, *7 (granting summary judgment in trademark infringement case on the issue of actual damages where plaintiff and its witnesses were unable to identify specific accounts or customers that were lost due to defendants' alleged infringement); *Groupion, LLC*, 859 F.Supp.2d at 1081 (granting summary judgment where plaintiff had "no evidence of any actual damages incurred").  Finally, it is not enough for OCM to simply assume that "but for" Lin's Waha's alleged infringement, it would have sold the same amount of the Products at Issue that Lin's Waha sold to the same customers, especially given that there is only the slightest of overlap between the parties' customers, and OCM has produced no evidence that it has ever operated in the majority of the states where Lin's Waha sold the Products at Issue [SUF 52].  *See e.g., The Apollo Theater Found., Inc. v. Western Inter. Syndication,* 2005 WL 1041141, at *11 (S.D.N.Y. 2005) (holding "[a]lthough a court may engage in 'some degree of speculation,' a plaintiff must establish its lost profits with specificity").

Finally, while some district courts have held that as an alternative to establishing its own actual damages, a plaintiff can attempt to recover the defendant's profits, that option is not available to OCM here.   Namely, in order to substitute a defendant's profits as a measure of damages, the plaintiff must demonstrate (1) that the plaintiff and defendant are in direct competition, and (2) that the plaintiff suffered an actual loss due to the defendant's infringing conduct.  *tagTrends, Inc. v. Nordstrom, Inc.,* 2014 WL 12561604, at *6 (C.D. Cal. Sept. 30, 2014).  However, if a plaintiff fails to present "competent evidence of losses suffered by [the plaintiff] as a result of

[the defendant's] conduct", there is no genuine issue of material fact and summary judgment is appropriate as to such damages. *Id*.  Here, as explained above, OCM has provided no "competent evidence" of any losses it has sustained as a result of Lin's Waha's actions.  Furthermore, as explained above, the undisputed facts establish that the vast majority of Lin's Waha's customers are in states in which OCM has produced zero evidence of sales. [SUF 52].  Thus, OCM and Lin's Waha cannot be considered "direct competitors" if they do not operate in the same market.  *See e.g., JIPC Management, Inc. v. Incredible Pizza Co., Inc.,* 2009 WL 10671438, at \*14–16 (C.D. Cal. June 24, 2009) (holding that plaintiff JIPC "cannot claim lost profits in states in which it does not operate. Further, because it is not possible that consumer confusion has occurred in states where JIPC's mark has not penetrated, JIPC cannot demonstrate that it has suffered compensable loss of goodwill or reputation in such states"); *Blau,* 2004 WL 5313967 at \*5 (holding that summary judgment on defendant's profits as a measure of plaintiff's damages was appropriate given that defendant and plaintiff did not market and sell to the same stores and, thus, were not direct competitors). Because OCM has failed to provide "sufficient evidence to raise triable issues of fact" as to whether OCM suffered any "actual loss" due to Lin's Waha's alleged infringement and whether the parties are in "direct competition," summary judgment on the issue of OCM's lost profits as a substitute for plaintiff's damages is proper.

## V.   CONCLUSION

Lin's Waha respectfully requests that the Court grant summary judgment on both claims contained in OCM's Complaint. In the alternative, LCC respectfully requests that this Court grant summary judgment on OCM's claims for actual damages and disgorgement of Lin's Waha's profits.

Dated: January 28, 2021                          Respectfully submitted,

witkow | baskin

By: */s/* Brandon J. Witkow
Brandon J. Witkow

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Defendant
LIN'S WAHA INTERNATIONAL
CORP.

witkow | baskin

**MOTION FOR SUMMARY JUDGMENT**