1  Brandon J. Witkow (SBN 210443)
2  bw@witkowlaw.com
   Erin C. Witkow (SBN 216994)
3  ew@witkowlaw.com
   Cory A. Baskin (SBN 240517)
4  cb@witkowlaw.com
5  witkow | baskin
   21031 Ventura Boulevard, Suite 700
6  Woodland Hills, California 91364
   Tel:   818.296.9508
7  Fax:   818.296.9510
8

9  Attorneys for Defendant
   LIN'S WAHA INTERNATIONAL CORP.
10

11                **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  OCM GROUP USA INC., | Case No. 2:19-cv-08917 SB (KSx) |
| 15                        Plaintiff, | **DEFENDANT LIN'S WAHA** |
| 16 | **INTERNATIONAL CORP.'S** |
| 17        vs. | **REPLY IN SUPPORT OF MOTION FOR SUMMARY** |
| 18  LIN'S WAHA INTERNATIONAL | **JUDGMENT ON PLAINTIFF'S** |
| 19  CORP, a New York corporation; and | **COMPLAINT; OR, IN THE ALTERNATIVE, SUMMARY** |
|     DOES 1-10. | **JUDGMENT ON PLAINTIFF'S** |
| 20 | **CLAIM FOR MONETARY** |
| 21                        Defendant. | **DAMAGES** |
| 22 | |
| 23 | **Hearing**: |
| 24 | |
| 25 | Date:  March 5, 2021 |
|     | Time:  8:30 a.m. |
| 26 | Ctrm:  6C |

27

28

---

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................1

II.   OCM HAS FAILED TO DEMONSTRATE THAT THERE IS A GENUINE
      ISSUE OF FFACT ON EITHER OF ITS CLAIMS .......................................3

      A.    OCM's Opposition Completely Ignores This Court's Ruling in
            *Summit Technology* ...............................................................3

      B.    Even Assuming This Court considers Any Alleged Differences
            Between the Products, OCM Has Failed to Create a Genuine Issue of
            Fact Regarding "Material Differences" ..................................5

      C.    OCM's Opposition Fails to Create a Genuine Issue of Fact as to its
            Claim for Monetary Damages.............................................11

III.  CONCLUSION ............................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Abbywho, Inc. v. Interscope Records,*
  2007 WL 9701989 (C.D. Cal. Oct. 23, 2007) ...................................................6

*Amer. Auto. Assoc. of Northern Calif. v. General Motors LLC,*
  367 F.Supp.3d 1072 (N.D. Cal. 2019) ..............................................................15

*Beltronics USA, Inc. v. Midwest Inventory Dist., LLC,*
  562 F.3d 1067 (10th Cir. 2009) .......................................................................10

*Blau v. YMI Jeanswear, Inc.,*
  2004 WL 5313967 (C.D. Cal. Jan. 2, 2004)................................................12, 13

*Bourdeau Bros., Inc. v. Int'l Trade Comm'n,*
  444 F.3d 1317 (Fed. Cir. 2006) ......................................................................10

*Conversive , Inc. v. Conversagent, Inc.,*
  433 F.Supp.2d 1079 (C.D. Cal. 2006) ..............................................................11

*Groupion, LLC v. Groupon, Inc.,*
  826 F.Supp.2d 1156 (N.D. Cal. 2011) ..............................................................12

*Hansen v. U.S.,*
  7 F.3d 137 (9th Cir. 1993) .................................................................................6

*Iberia Foods Corp. v. Romero,*
  150 F.3d 298 (3rd Cir. 1998)............................................................................11

*Liberty Sales Assoc., Inc. v. Dow Corning Corp.,*
  816 F.Supp. 1004 (D.N.J. 1993)........................................................................14

*Moa Moa, Inc. v. New Moa Collection,*
  2019 WL 8112468 (C.D. Cal. Aug. 30, 2019) ...................................................12

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.,*
  638 F.3d 1137 (9th Cir. 2011) ...........................................................................1

*San Miguel Pure Foods Co., Inc. v. Ramar Inter. Corp.,*
  625 F.App'x 322 (9th Cir. 2015)........................................................................12

*Sansi North America, LLC v. LG Elec. USA, Inc.,*
  2019 WL 8168069 (C.D. Cal. Nov. 14, 2019) ...................................................11

**MOTION FOR PARTIAL SUMMARY JUDGMENT/SUMMARY JUDGMENT**

*SKF USA, Inc. v. Int'l Trade Comm'n,*
   423 F.3d 1307 (Fed. Cir. 2005) ........................................................... 10

*Soremekun v. Thrifty Payless, Inc.,*
   509 F.d3 978 (9th Cir. 2007) ................................................................ 6

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,*
   875 F.3d 426 (9th Cir. 2017) ................................................................ 11

*Summit Tech., Inc. v. High-Line Med. Instr. Co., Inc.*
   922 F.Supp.299 (C.D. Cal. 1996) ................................................ 1, 4, 5, 6

*tagTrends, Inc. v. Nordstrom, Inc.,*
   2014 WL 12561604 (C.D. Cal. Sept. 30, 2014) ............................... 2, 15

*Yamaha Int'l Corp. v. ABC Int'l Traders, Inc.,*
   1989 WL 206429 (C.D. Cal. Aug. 11, 1989) ..................................... 14

## STATUTES

15 U.S.C. § 1117(a) ............................................................................... 14

Fed. R. civ. P. 12(b)(6) ........................................................................... 4

Fed. R. Civ. P. § 56(e) ............................................................................ 6

## I. __INTRODUCTION__

Plaintiff OCM Group USA, Inc.'s ("OCM") Opposition to Defendant Lin's Waha International Corp.'s ("Lin's Waha") Motion for Summary Judgment demonstrates OCM's fundamental misunderstanding of the purpose of trademark law, i.e., to prevent consumer confusion. *See e.g., Network Automation, Inc. v. Adv. Sys. Concepts, Inc.,* 638 F.3d 1137, 1154 (9th Cir. 2011) ("the linchpin of trademark infringement is consumer confusion"). OCM has conceded that Lin's Waha sold **_genuine_** beverage products made by the **_same manufacturer_** of the products OCM sells, OCM has conceded that Lin's Waha never altered the contents of those products, OCM has conceded that there is no difference in the taste, quality or safety of the products sold by Lin's Waha, and OCM has conceded that there has been no consumer confusion as to the source of the goods. Despite all of this, OCM seems to believe that Lin's Waha can be liable for trademark infringement for its sale of genuine products simply because OCM claims to be the "exclusive distributor" of the Products at Issue in the United States. As explained in Lin's Waha's Motion and below, regardless of any "exclusivity" OCM claims to enjoy, Lin's Waha cannot be liable for trademark infringement for its sale of genuine products under the First Sale Doctrine, even if there are alleged differences between the products. *See Summit Tech., Inc. v. High-Line Med. Instr. Co., Inc.* 922 F. Supp. 299, 307 (C.D. Cal. 1996). While OCM may feel it is not achieving the full benefits of its purported "exclusive" arrangement, trademark law is not the correct vehicle to enforce its rights. *Id.*

OCM also lacks an understanding regarding its burden in opposing a summary judgment motion. Despite admitting in discovery that Lin's Waha's products are genuine and failing to identify any differences between the products or consumer confusion [SUF 22, 23, 25, 26], OCM conclusorily asserts in its Opposition that Lin's Waha's products are "materially different" from OCM's products because they lack certain "veterinary certificates" purportedly required by the U.S. Department of Agriculture ("USDA"). Putting aside that this assertion directly conflicts with its prior

discovery responses, it is based on **nothing more** than OCM's own self-serving declarations.  OCM has provided the Court with no supporting factual data or evidence demonstrating that there is ***any*** actual difference between the products sold by OCM and Lin's Waha, that the USDA requires veterinary certificates for importation of the Products at Issue, or that the lack of such certificates is a material difference that would be relevant to consumers when purchasing the products, particularly when OCM has submitted a declaration from the manufacturer itself admitting that there is no concern regarding the quality and safety of the products sold by Lin's Waha in the United States.  It is well-settled that when the nonmoving party relies only on its own affidavits to oppose summary judgment, as OCM does here, it cannot rely on conclusory, unsupported allegations to create an issue of material fact.

Finally, OCM's Opposition demonstrates that OCM  misunderstands its burden in establishing its entitlement to monetary damages under the Lanham Act.  While OCM concedes that it must point to a "measurable loss" to establish actual damages, it has provided no competent evidence of any such loss to create a genuine issue of fact. Nor has it provided any actual evidence of willful infringement to entitle it to disgorgement of Lin's Waha's products.  Instead, OCM claims that its damages should be presumed just because it is the alleged "exclusive distributor" of the products at issue. Again, this is not the law, and summary judgment is appropriate when a plaintiff "simply assumes" that any profits realized by the defendant represent damages suffered by the plaintiff.  *See tagTrends, Inc. v. Nordstrom, Inc.,* 2014 WL 12561604, at *5 (C.D. Cal. Sept. 30, 2014).  That is exactly what OCM has done here.

Put simply, this is a case where Lin's Waha sold ***genuine*** goods manufactured by the same manufacturer as OCM in the United States for a period of 15 months, and stopped selling the products shortly after receiving a cease and desist letter from OCM.  Despite the fact that OCM has produced sales invoices totaling only $232, it seeks damages of up to $82,666, based on nothing more than the unsupported assumption of its declarant that it "would have" made such profits "due to the

exclusivity."  Because OCM has not and cannot provide this Court with evidence to create a genuine issue for trial on either liability or damages, Lin's Waha respectfully requests that the Court grant its Motion for Summary Judgment.[1]

## II.   OCM HAS FAILED TO DEMONSTRATE THAT THERE IS A GENUINE ISSUE OF FACT ON EITHER OF ITS CLAIMS

### A.   OCM's Opposition Completely Ignores This Court's Ruling in *Summit Technology*

As explained in Lin's Waha's Motion, OCM *admitted* in discovery that Lin's Waha "purchased/sold *genuine* products" [SUF 22, 23, 25, 26] (emphasis added); thus, OCM's trademark infringement claim is barred by the First Sale Doctrine.  In its Opposition, OCM unsuccessfully attempts to resurrect its failed claim by ignoring its prior admissions and arguing that the Products at Issue sold by Lin's Waha are "materially different" from those sold by OCM because the manufacturer, XPP, "made its domestic products using dairy/milk sources different from its products earmarked for U.S. consumption." (Opp., 3:23-25).  Specifically, OCM argues that "XPP's US-bound products (those sold by OCM) have veterinary certificates to prove milk/dairy sources are in compliance with entry requirements set by the USDA/APHIS (US Department of Agriculture/Animal and Plant Health Inspection Service)," whereas Lin's Waha sells genuine XPP products that are made for Chinese consumption and, therefore, are "not compliant with USDA/APHIS import requirement."  (*Id.,* 4:1-8).  However, what OCM wholly ignores is this *precise* argument was considered - *and rejected –* by this Court in *Summit Tech.*

In that case, Summit attempted  to stop the defendant's sale in the United States of genuine Summit medical laser systems that were manufactured for *foreign use*

---

[1] It is unclear whether OCM is arguing that Local Rule 7-3's requirement was not satisfied. To be clear, counsel for Lin's Waha met and conferred with Plaintiff via email and telephone on January 20 and 21 regarding the substance of its motion and any potential resolution, in accordance with the requirements of Local Rule 7-3. (OCM Compendium of Exhibits ("COE"), at Exh. 1).

*only*.  922 F. Supp. at 302.  Like OCM, Summit argued that the re-imported foreign Summit systems were not "genuine" Summit products because they ***differed "materially"*** from the systems intended for U.S. use, including the fact that they were not approved by the FDA and not subject to the same quality controls.[2]  *Id.*  The district court disagreed with Summit, dismissing its trademark claims under Fed. R. Civ. P. 12(b)(6), finding that notwithstanding the differences between the foreign and domestic systems, the "essential fact remains that based on the allegations in the Complaint, the re-imported [foreign] laser systems are Summit products, manufactured and sold by Summit itself.  Thus, consumers will not be confused as to whether the re-imported laser systems are 'Summit' systems–they are.  There is no 'likelihood of confusion as to the source of the goods,' which, based on Plaintiff's allegations, is Summit." *Id.* at 308 (citations omitted).  Under the First Sale Doctrine, Summit could not "use trademark law to control the downstream distribution of products that Summit *itself* manufactured and sold." *Id.* at 309 (emphasis in original).

Here, like Summit, the Products at Issue sold by OCM and Lin's Waha are manufactured in China by the exact same entities: XPP and Lang Fong Yuen.  [SUF 8, 10-12, 18-19].  They bear the same, genuine trademarks registered by these entities, and they are not altered in any way between manufacture and sale in the U.S.  [SUF 13-15, 17-21].  Thus, all of the Products at Issue – those sold by OCM *and* Lin's Waha – are ***genuine products***, and it is ***irrelevant*** whether there are "differences" between the genuine foreign and U.S. versions of the products.  *Summit Tech.,* 922 F.Supp. at 309 ("the fact that Summit sold *different* goods in different markets for different prices does not render the 'first sale' rule inapplicable . . . Simply put, if

---

[2] OCM alleges that Lin's Waha's products are "materially different" from OCM's products because Lin's Waha did not obtain "veterinary certificates" in compliance with USDA requirements. As explained in section II.B below, OCM has provided no competent evidence to support this allegation; however, it should be noted that in *Summit Tech.,* the plaintiff alleged the defendant's goods were not in compliance with FDA requirements, a difference the district court in *Summit Tech.* did not find relevant in its application of the First Sale Doctrine to bar the plaintiff's trademark claim.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Summit manufactures laser systems which differ from those designed for use in the United States, and sells them in foreign markets, Summit does so at its own risk"). Because the different Summit products were all manufactured by Summit and were, therefore "genuine," the court held that there "is no danger that consumers are likely to be confused as to the *source* of the Summit laser systems – the main concern of trademark law." *Id.* at 310. The same goes for OCM here. OCM may sue XPP for allowing its genuine products to be resold in the United States, despite its purported exclusive distributor agreement, or XPP may sue Chinese entities for selling certain products to U.S. distributors such as Lin's Waha, but given that there is no likelihood of confusion as to the source of the goods – a fact OCM admits - Lin's Waha cannot be held liable under trademark law for selling genuine products manufactured by XPP in the United States. As made clear in *Summit Tech.:*

> The fact that used Summit systems are now in competition with new systems intended for U.S. is not a matter of trademark law concern. Certainly, Summit might have dealt with this problem, by drafting restrictive licensing agreements or barring foreign purchasers from re-importing the Summit machines into the United States. Summit apparently failed to do this. It cannot now turn to trademark law to remedy this failure.

*Id.* at 310-11.

Nowhere in its Opposition does OCM address *Summit Tech.* or explain how its holding should not apply in the instant case, which involves virtually identical facts to this case. If a trademark owner and manufacturer such as Summit cannot stop the sale of genuine goods in the United States, even if they are materially different than other genuine goods purportedly manufactured for sale in the United States, neither should an alleged licensee and distributor such as OCM.

**B.  Even Assuming This Court Considers Any Alleged Differences Between the Products, OCM Has Failed to Create a Genuine Issue of Fact Regarding "Material Differences"**

As explained in *Summit Tech.,* when the goods at issue are manufactured and originally distributed by the ***same*** manufacturer, as they are in this case, they are all

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

"genuine" products, as opposed to being "parallel" or "gray market" goods manufactured by a foreign licensee of the trademark owner, over which the trademark owner does not have any control.  922 F. Supp at 309-310.  In cases involving such "parallel" or "gray market" goods, the court looks at whether there are "material differences" between the goods to determine if the first sale doctrine bars a claim of trademark infringement.  *Id.*  Here, there is no need to determine whether there are "material differences" between the products sold by OCM and Lin's Waha, because they are all manufactured by XPP and, therefore, all genuine.  However, even if that was not the case, and the Court did examine whether any "material differences" exist between the Products at Issue, Lin's Waha would nonetheless be entitled to summary judgement on OCM's trademark claim because OCM has failed to meet its burden in creating a genuine issue of fact as to the "material differences" between the products.

As explained above, OCM claims in its Opposition that the Products at Issue are "materially different" because "XPP's US-bound products (those sold by OCM) have veterinary certificates to prove milk/dairy sources are in compliance with entry requirement set by USDA/APHIS," whereas Lin's Waha's products are "not compliant with USDA/APHIS import entry requirement." (Opp., 4:1-8).  However, such general, unsupported allegations of "differences" between the products are simply not enough to overcome summary judgment.   Rather, the nonmoving party must go beyond the pleadings and, by its own affidavits or depositions, answers to interrogatories, and admissions on file, come forth with ***specific facts*** to show that a genuine issue of material fact exists.  *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) (citing Fed.R.Civ.P. 56(e)).  When the nonmoving party relies only on its own affidavits to oppose summary judgment, as OCM does here, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *Id.*; *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *Abbywho, Inc. v.*

*Interscope Records,* 2007 WL 9701989, at *12 (C.D. Cal. Oct. 23, 2007) (Plaintiffs' "bare assertions" were "simply insufficient to raise a triable issue of fact" on trademark claim). Here, OCM's allegations of "material differences" are just that – allegations – unsupported by any factual data or competent evidence.

*First*, OCM has not provided this Court with any competent evidence that the USDA even requires "veterinary certificates" for the Products at Issue. OCM alleges that they are required for products containing "milk/dairy" (Opp., 4:1-5; 5:17-20); however, ***three*** (3) of the nine Products at Issue do not even contain milk and/or dairy (i.e., MECO brand teas: Kumquat & Lemon, Thai Lime, and Peach & Pink Grapefruit). (*See* Supplemental Declaration of Xiuqing Lin ("Lin Supp. Decl."), at ⁋ 2). Thus, even assuming the USDA requires a "veterinary certificate" for the importation of products containing milk/dairy, that purported requirement would not apply to these three products. Thus, OCM has not alleged the existence of ***any differences*** with respect to these three products, much less any "material differences."

*Second*, with respect to the six (6) Products at Issue[3] that do contain milk and/or dairy ingredients, OCM has provided no competent evidence that the products XPP manufactures for OCM's distribution in the United States are in any way different from those same products it manufactures for distribution in China. OCM has provided only unsupported and self-serving statements in two declarations that generally state that the Products "are different." (*See* Declaration of Xiauqing Liu ("Liu Decl."), at ¶ 2; Declaration of XuHuan Mo ("Mo Decl."), ¶¶ 4-6. OCM has submitted no documents or other evidence demonstrating that XPP manufactures products for U.S. distribution using different ingredients or other testing or compliance than it uses for products distributed in China. To the contrary, the "Products Distribution Agreement" between XPP and OCM, which OCM produced in this action, states that the products it provides to OCM for distribution "are

---

[3] These six (6) Products are: XIANGPIAOPIAO Dasheen Milk Tea, XIANGPIAOPIAO Strawberry Milk Tea, XIANGPIAOPIAO Wheat Milk Tea, XIANGPIAOPIAO Original Milk Tea, MECO Milk Tea, and LAN FONG YUEN Milk Tea.

1   manufactured *in accordance with the quality standards of [People's Republic of*

2   *China]* and can only be sold after passing inspection."  [SUF 18] (emphasis added).

3   Nowhere in this Agreement does it state that goods manufactured for OCM are

4   manufactured in accordance with U.S. requirements, and OCM's conclusory and

5   unsupported declaration testimony is not enough to create a genuine issue of fact.

6           *Third*, OCM has failed to provide any competent evidence that the USDA even

7   has specific importation requirements for the type of finished bottled beverages at

8   issue here, or requires any "veterinary certificates" for the importation and/or sale of

9   these products in the United States.  OCM cites no regulations, orders or other

10  mandates from the USDA that pertain to the claimed requirements. Rather, once

11  again, OCM provides only conclusory statements by its local brand manager and

12  XPP's business manager that import entry requirements exist, without citation to any

13  of these purported legal requirements. (*See* Liu Decl., at ¶ 2 [Dkt. 32-17]; Mo Decl.,

14  ¶ 5 [Dkt. 32-18]).  However, neither Liu nor Mo are identified as importation experts

15  nor has OCM laid any foundation for their purported knowledge[4], yet these

16  individuals summarily declare (without any legal citation or analysis) that a

17  requirement for importation is the existence of a "veterinary certificate." (*Id.*) Again,

18  this conclusory testimony falls far short of establishing that the USDA requires

19  "veterinary certificates" for the Products at Issue.[5]

20

21  ---------------------

    [4] *See* Lin's Waha's Evidentiary Objections filed concurrently herewith.

22  [5] The USDA's Animal and Plant Health Inspection Service ("APHIS") does *not*

23  require a veterinary certificate for the import of "[f]ormulations containing dry milk

    products as the only animal origin ingredient, commercially labeled and presented in

24  final finished packaging requiring no further manipulation of the product (*includes*

    *all products that contain dry milk powder* or dry milk products to include the

25  following as a partial, not all-inclusive list: baking mixes, cocoa mixes, drink mixes,

26  etc.)" (emphasis added). (*See* Request for Judicial Notice ("RJN"), Exhs. A & B).  As

    can be seen in the enhanced image of the list of ingredients on *OCM's own products*,

27  contained in paragraph 3 of the Lin Supplemental Declaration, the ingredient is a

28  "milk tea *powder*" and/or "dry milk" which would fall within an exception to the

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

witkow|baskin

Indeed, the "veterinary certificates" that OCM submitted to the Court as evidence of this alleged "material difference" ***do not even pertain to any of the Products at Issue***. Specifically, OCM's Exhibit 3 attaches two alleged "Veterinary (Health) Certificates" that pertain to only two products (Matcha Mix Milk Tea and Muscovado Sugar Mix Milk Tea) – neither of which are Products at Issue. (*See* COE, Exh. 3 [Dkt. 32-5]). Furthermore, both certificates are dated March 24, 2020, ***well after*** the infringement period at issue – i.e. July 2018 through October 2019. Thus, not only does OCM not satisfy its burden to establish that "Veterinary Certificates" are required, but this evidence does not even demonstrate that OCM itself possessed "veterinary certificates" for the Products at Issue during the same timeframe Lin's Waha was offering the products.

In fact, the evidence demonstrates that OCM *itself* was selling XPP goods "made for Chinese domestic consumption" in the United States ***prior to*** its alleged exclusive distribution agreement with XPP. Specifically, OCM has provided this Court with evidence that it was selling XPP products in the United States as early as December 2017 (*see* Declaration of Xhang Lin Li, ¶ 2 [Dkt. 32-11]; COE, Exh. 10, Column G of Excel sheet, showing sales going back to January 2018), yet it claims it

---

"Veterinary Certificate" requirement. (RJN, Exhs. A & B; Lin Supp. Decl., ¶¶ 3 & 4). There is no dispute that Lin's Waha imports these same genuine products and are "commercially labeled and presented in final finished packaging requiring no further manipulation of the product;" accordingly, OCM offers no explanation as to why these products require a veterinary certificate. [SUF 26 ("It appears that LW purchased/sold genuine products during the time when OCM has the exclusivity")]. While OCM points to the seizure of two shipments by the U.S. Department of Agriculture in August 2019 and September 2019 (COE, Exh. 4), it is Lin's Waha's contention that these shipments were seized improperly in light of the above-stated analysis. (Lin Supp. Decl., ¶ 6). However, because Lin's Waha had already agreed to stop selling the Products at Issue after receiving OCM's cease and desist letter in July 2019, it made the economic decision to not contest the seizure. (*Id.*) Indeed, no other shipments of the Products at Issue imported by Lin's Waha were ever seized (for lack of veterinary certification or any other reason). (*Id.* and Exh. 7 (several examples of U.S. Customs and Border Entry Summary Documents for the Products at Issue)).

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

did not enter into an exclusive distribution agreement with XPP until July 1, 2018. (Liu Decl., ¶1 [Dkt. 32-17]).  OCM admits that the alleged "material difference" between the Products at Issue exists between Lin's Waha's products and those products "*made by XPP for OCM's exclusive distribution in the U.S.*"  (*Id.,* ¶ 2) (emphasis added).  If this "material difference" only exists between the products sold by OCM after its alleged exclusive distributorship started in July 2018, it follows that there was no "material difference" between Lin's Waha's products and the products OCM sold in the United States prior to July 2018.  This fact alone defeats its unsupported allegation of any "material differences," as "a plaintiff in a gray market trademark infringement case must establish that *all or substantially all* of its sales are accompanied by the asserted material difference in order to show that   its goods are   materially different." *Bourdeau Bros., Inc. v. Int'l Trade Comm'n,*  444 F.3d 1317, 1321 (Fed. Cir. 2006) (citing *SKF USA, Inc. v. Int'l Trade Comm'n,* 423 F.3d 1307, 1315 (Fed. Cir. 2005)) (holding that "the sale by a trademark owner of the very same goods that he claims are gray market goods is inconsistent with a claim that consumers will be confused by those alleged gray market goods").

*Finally*, even assuming OCM had provided the Court with competent evidence that it possessed veterinary certificates for the six Products at Issue containing milk/dairy during the relevant time period, under Federal law, this alleged "difference" would not be considered "material." As explained in Lin's Waha's Motion, "not all differences are material." *Beltronics USA, Inc. v. Midwest Inventory Dist., LLC* 562 F.3d 1067, 1072-3 (10th Cir. 2009) (holding that some differences "prove so minimal that consumers who purchase the alleged infringer's goods get precisely what they believed they were purchasing [and] consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales.") OCM's own declaration testimony establishes  that XPP has "***no concern***" regarding "the ***safety and quality*** of XPP [Chinese] domestic products" sold by Lin's Waha in the United States.  (Mo Decl., ¶ 5 [Dkt. 32-18]) (emphasis added).  Thus, even

assuming the products sold by Lin's Waha did not have "veterinary certificates" and OCM's did (again, OCM has not provided competent evidence this is the case), such a difference would not be "material," as consumers would be getting precisely what they believed they were purchasing, and summary judgment is appropriate. *See e.g., Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 306 (3ʳᵈ Cir. 1998) (directing district court to enter summary judgment for defendant on trademark infringement claim based on finding of "no material difference" between products at issue).

Because OCM has failed to create a genuine issue of fact regarding the application of the First Sale Doctrine to bar its trademark claim (and the dependent unfair competition claim), Lin's Waha respectfully requests that the Court grant summary judgment on both claims.[6]

## C. OCM's Opposition Fails to Create a Genuine Issue of Fact as to its Claim for Monetary Damages

As explained in Lin's Waha's Motion, despite the fact that it has provided no evidence of any actual loss, OCM claims it is entitled to recover its own "lost profits" of allegedly $82,666 or Lin's Waha's profits of approximately $24,847, under either a disgorgement or unjust enrichment theory. As for the claim for disgorgement, Lin's Waha explained in its Motion that a plaintiff seeking disgorgement of a defendant's profits in a trademark infringement case must demonstrate that the defendant willfully infringed the mark. *See e.g., Sansi North America, LLC v. LG Elec. USA, Inc.,* 2019 WL 8168069, at *6–10 (C.D. Cal. Nov. 14, 2019) (citing *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 440 (9th Cir. 2017). In its Opposition, OCM makes the vague assertion that "there is definitely evidence regarding some form of intent"; thus, disgorgement of Lin's Waha's profits is appropriate. (Opp., 10:10-15). In support of this claim, OCM cites ***only*** to the fact that Lin's Waha sold off its

---

[6] OCM does not mention its unfair competition claim in its Opposition, apparently conceding that it is entirely dependent on its trademark claim. *See e.g., Conversive, Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1093-94 (C.D. Cal. 2006) (granting summary judgment on unfair competition claims in light of failed trademark claim).

remaining inventory in the three months following its receipt of a cease-and-desist letter in July 2019, with the final sale occurring in October 2019. (*Id.*) As explained in Lin's Waha's Motion, such conduct is not sufficient as a matter of law to constitute the "deliberate intent to deceive" necessary to establish willful infringement. *See e.g., Groupion, LLC v. Groupon, Inc.*, 826 F.Supp.2d 1156, 1165 (N.D. Cal. 2011) ("the failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith"). OCM's Opposition does not address these authorities or explain how Lin's Waha's actions constitute an "intent to deceive." OCM also ignores that "[i]nfringement is not willful if the party reasonably believes that its usage of a trademark is not barred by law." *See San Miguel Pure Foods Co., Inc. v. Ramar Inter. Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015). As explained in its Motion, Lin's Waha has always believed that its sale of genuine products in the United States is permitted under the First Sale Doctrine [SUF 29]. Indeed, as explained above, OCM's own evidence establishes that it was selling the identical products sold by Lin's Waha in the United States as early as 2017 (Li Decl., ¶ 2 [Dkt. 32-11]; COE, Exh. 10), despite the fact that it alleges it did not become the exclusive distributor until July 2018. (Liu Decl., ¶ 1 [Dkt. 32-17]). It is unclear how OCM can now claim the exact conduct constitutes an "intent to deceive" customers. Because OCM has not and cannot create a genuine issue of fact regarding willful infringement, summary judgment on its claim for disgorgement of Lin's Waha's profits is appropriate. *See e.g., Moa Moa, Inc. v. New Moa Collection*, 2019 WL 8112468, at *12–13 (C.D. Cal. Aug. 30, 2019) (granting summary judgment on willfulness and disgorgement of profits based on lack of evidence).

As for OCM's claim for actual damages based on either its own alleged lost profits or Lin's Waha's profits, OCM concedes in its Opposition that a "plaintiff must be able to point to a 'measurable loss' incurred as a result of the infringement." (Opp., 6:15-17) (citing *Blau v. YMI Jeanswear, Inc.,* 2004 WL 5313967, at *4 (C.D. Cal. Jan. 2, 2004)). This is true regardless of whether a plaintiff seeks actual damages in

witkow|baskin

the form of its own losses or in the form of the defendant's profits as a proxy for its own damages.  *Id.* at *3-5.  In the case of the latter, the plaintiff must demonstrate both that it has suffered a "measurable loss" as a result of the infringement, and that the parties are in "direct competition."  *Id.*  As pointed out in Lin's Waha's Motion, OCM has not provided **any** evidence of lost sales or customers as a result of Lin's Waha's actions in discovery, and it fails to do so in its Opposition  [SUF 53-54].

Specifically, OCM ignores its burden to provide evidence of some "measurable loss," and instead argues *ipso facto* that its damages should somehow be presumed because it is the alleged "exclusive distributor" of XPP's products in the United States.  (Opp., 6:27-7:4) ("Here, LW is in direct competition with OCM related to the Branded Products for the simple reason that OCM is the exclusive distributor in the U.S. during the relevant period. Any act of distributing the Branded Products (in the U.S.) by LW . . . directly competes, injures and diverts sales that can only be made by OCM due to the undisputed exclusivity").[7]  Indeed, OCM's "computation" of $82,666 in lost sales is devoid of any support or explanation.  Rather, it is based on the conclusory and self-serving declaration testimony that the products sold by Lin's Waha "would have been sold by OCM, due to the exclusivity."  (Liu Decl., ¶ 6). OCM cites no authority to support its claim that an exclusive distributor's actual damages are presumed or that it is presumed that an exclusive distributor-plaintiff directly competes with a defendant, even when the plaintiff has **never** sold products

---

[7] OCM attempts to argue that the parties "directly compete" because it has "four branch offices to serve its customers all cross [sic] the United States." (Opp., 10:27-11:2 and COE, Exh. 11).  However, Exhibit 11 reflects what appears to be a screen shot of office locations for *OCM Globe USA, Inc.*, which is **not** the plaintiff or a party to this action, and does not indicate where OCM sells the Products at Issue.  Also, as evidence of this "direct competition", OCM has submitted photos that purportedly demonstrate that OCM's "advertisement activities show that its market penetration is the whole U.S." (*Id.*, Exh. 12). In reality, these photos appear to reflect marketing efforts in California, Texas, and New York only, and it is unclear if the Products at Issue are even depicted in these photos. (*Id.*) OCM concedes that there is **only one** store (New York) where the parties both sold the Products at Issue.  (Opp., 8:12-16).

in geographic areas occupied by the defendant.  Instead, OCM's Opposition cites three cases that have nothing to do with either damages or trademark claims.[8]

The reason OCM cites no authority is because its "theory" is nonsensical.  In any trademark infringement case, the trademark owner is vested with – by definition – the "exclusive right" to sell products bearing its trademark; thus, in each of those cases, the court would be required to assume that – given that exclusive right – any sales by the defendant of infringing products would "directly compete with, injure, and divert sales from" the trademark owner.  In other words, although OCM would like to believe that they are of a magical quality by being XPP's "exclusive distributor," every trademark case has a plaintiff trademark owner who has the exclusive right to enforce their mark.   Those trademark plaintiffs do not – as OCM would like it – get a shortcut to proving up their damages just because they are asserting their exclusive rights in the trademark against a claimed infringer.   Indeed, under OCM's theory, it could enter into an exclusive distributor agreement with XPP, make no attempt to sell XPP products in the United States, and nonetheless be entitled to recover all of Lin's Waha's profits upon a finding of liability for trademark infringement simply due to its status as the alleged exclusive distributor. This absurd result is antithetical to the fundamental purpose of a damages award for trademark infringement, which the Ninth Circuit has made clear is to "constitute compensation" rather than to penalize. *See* 15 U.S.C. § 1117(a).  OCM's belief that it would have made ***all of the sales*** that Lin's Waha made of the Products at Issue simply because

---

[8] OCM cites *Schaben v. Samuel Moore and Co.,* 462 F.Supp. 1321, 1323-24 (S.D. Iowa 1978) (action filed by a *non-exclusive* distributors against a manufacturer for violation of the Robinson-Patman Discrimination and Sherman Anti-Trust Acts, in which district court found, *inter alia,* that the distributors failed to show a reasonable probability of substantial injury to competition or an unreasonable restraint of trade); *Yamaha Int'l Corp. v. ABC Int'l Traders, Inc.,* 1989 WL 206429 (C.D. Cal. Aug. 11, 1989) (dismissing defendant's antitrust counterclaims under the Sherman Anti-Trust Act with prejudice); *Liberty Sales Assoc., Inc. v. Dow Corning Corp.,* 816 F.Supp. 1004, 1007 (D.N.J. 1993) (holding that New Jersey Franchise Practices Act did not apply to relationship between manufacturer and distributor).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

it alleges it entered into an exclusive distributor agreement is precisely the type of "speculation" that is routinely rejected by district courts. *See e.g., Amer. Auto. Assoc. of Northern Calif. v. Gen'l Motors, LLC*, 367 F.Supp.3d 1072, 1107 (N.D. Cal. 2019) (awarding summary judgment on damages and holding that the declaration submitted by the plaintiff provided only "conclusory statements" of plaintiff's "belief" that plaintiff had been damaged by defendant's infringement "not supported by detailed facts or evidentiary support"); *tagTrends*, 2014 WL 12561604, at *5, n. 15 (awarding summary judgment on damages and holding that declaration submitted by plaintiff "simply assumes that any profits realized by [defendant] represent damages suffered by Plaintiffs"). Put simply, OCM bears the burden of establishing that it has suffered actual loss as a result of Lin's Waha's alleged infringement, beyond mere speculation. It has failed to do that, and summary judgment is appropriate.[9]

## III.  **CONCLUSION**

For the reasons set forth above, Lin's Waha respectfully requests that the Court grant summary judgment on both claims contained in OCM's Complaint. In the alternative, LCC respectfully requests that this Court grant summary judgment on OCM's claims for actual damages and disgorgement of Lin's Waha's profits.

Dated: February 20, 2021

Respectfully submitted,

witkow | baskin

By: */s/ Brandon J. Witkow*
Brandon J. Witkow
Attorneys for Defendant LIN'S WAHA
INTERNATIONAL CORP.

---

[9] Furthermore, OCM's "damages computation" set forth in the Liu Declaration that OCM would have made $82,666 in profits on the products Lin's Waha sold, even though Lin's Waha only made $24,846.73, is inadmissible, as Liu has "has not identified any specific evidence supporting [her] evaluation of the profit margin" realized by OCM, and OCM has failed "to establish a proper factual basis for [Liu's] evaluation of Plaintiffs' damages." *tagTrends*, 2014 WL 12561604, at *5; *see also* Lin's Waha's Evidentiary Objections filed concurrently herewith.