UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:19-cv-08917-SB-KS | Date: | 3/5/2021 |
|---|---|---|---|

| Title: | OCM Group USA, Inc. v. Lin's Waha International Corp. |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | Katy Thibodeaux |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Jen -Feng Lee | Brandon J. Witkow |

**Proceedings:** **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30) AND APPLICATION TO FILE UNDER SEAL (DKT. NO. 33)**

Before the Court is Defendant Lin's Waha International Corp.'s motion for summary judgment. Dkt. No. 30 (MSJ). Plaintiff OCM Group USA filed an opposition. Dkt. No. 32 (Opp.). Defendant filed a reply. Dkt No. 36 (Reply).

**I.   BACKGROUND**

This case involves a dispute between a California corporation, Plaintiff OCM, and a New York corporation, Defendant Lin's, regarding Chinese beverage products that both corporations sell across the country.

Defendant imports roughly 600 food and beverage products purchased from food manufacturers and distributors in China, Malaysia, Taiwan, and Thailand. Dkt. No. 30-1 (SUF 1). Defendant purchases its Chinese products through an affiliate in China, which then exports these products to Defendant in the United States. SUF 2. When Defendant receives these products, they are packaged and

sealed, and no other alterations are made to any of the contents before U.S. sale (other than adding English to the nutrition label as required by federal law). SUF 3. Defendant has sold its products to 450 markets in 34 states in the United States. SUF 4.

Plaintiff alleges that it is the exclusive distributor of certain brands of Chinese grocery products, Xiang Piao Piao, Meco, and Lan Fong Yuen. Compl. ¶ 10. Plaintiff contends that these "brands" are the subject of four separate trademark registrations with the United States Patent and Trademark Office issued to Chinese manufacturers Xiang Piao Piao Food Co., Ltd. (XPP) and Lan Fong Yuen Food Co., Ltd. *Id.* ¶ 11. Plaintiff alleges that Defendant "impermissibly makes, uses, imports, sells and/or offers to sell" the products at issue, nine types of Chinese milk tea beverages. *Id.* ¶ 13.

Defendant began selling the products at issue in the United States in July 2018. SUF 27. Defendant states that it was aware that these products were being sold by other distributors at that time but was unaware of any exclusive distributor agreement. SUF 28. On July 19, 2019, Plaintiff sent a cease and desist letter to Defendant, which did not respond. SUF 31. Though Defendant's position is that its sales are lawful, it stopped selling the products at issue, with its last sale taking place on October 28, 2019. SUF 32-33.

Plaintiff sued Defendant in this Court for trademark infringement and unfair competition. Compl. ¶¶ 22-31. Defendant now moves for summary judgment on both claims. Dkt. No. 30.

## II.     **DISCUSSION**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If

the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, Defendant moves for summary judgment on the trademark infringement claim because "there is no dispute that the products at issue sold by Defendant are genuine products bearing authentic trademarks, and are manufactured in China by the same entities that manufacture Plaintiff's products bearing the trademarks at issue." MSJ 1. Alternatively, Defendant seeks partial summary judgment regarding the monetary damages for trademark infringement. MSJ 1-2. For the following reasons, the Court concludes summary judgment is appropriate on the first ground.

A gray-market good is "a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). The Ninth Circuit has explained that "[i]n general, the sale of gray-market goods may infringe on the U.S. trademark holder's rights, subject to the consumer confusion analysis that generally governs trademark infringement claims." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1092 (9th Cir. 2013). But an "exception to this rule" exists because "trademark law does not extend to the sale of 'genuine goods.'" *Id.* "[A] gray-market good is 'genuine' only if it does not materially differ from the U.S. trademark owner's product." *Id.* "Because the likelihood of confusion increases as the differences between products become more subtle, the threshold for determining a material difference is low." *Id.* "The key question is whether a consumer is likely to consider a difference relevant when purchasing a product," and courts have found a difference "material" for a variety of reasons. *Id.* (noting "differences in language, quality control, and packaging may each be sufficiently material to render imported goods not 'genuine'").

Here, Defendant contends that the undisputed facts show that "there are no 'material differences' between the Products at Issue.'" MSJ 16. Defendant purchased Chinese food and beverage products through its wholly owned affiliate in China, which then exported these Chinese food products to Defendant in the United States. SUF 2. The products at issue are purchased by the affiliate from the Chinese manufacturers, XPP and Lan Fong Yuen, bearing genuine marks. SUF 12. Upon purchase from the manufacturer, the products are sealed, not altered in their contents, packaging, or labeling, and are identical in appearance to the products by the manufacturers in China. SUF 13. Similarly, Plaintiff does not change any of the contents or packaging when purchasing the same products from the same

manufacturers. SUF 19. Consequently, Plaintiff's and Defendant's products are identical when sold in the United States. SUF 17.

In further support, Defendant offers images of the products at issue and notes "there are no differences in the labeling or appearance of the Products at Issue." SUF 21; *see* Dkt. No. 30-11 (Witkow Decl. Ex. 9) (chart of side-by-side comparisons of products sold by Defendant and Plaintiff). Defendant also relies on a discovery request it served for "all documents reflecting or evidencing any differences between the packaging and/or contents of the products" at issue. Dkt. No. 30-12 (Witkow Decl. Ex. 10) at 85. In response, Plaintiff identified no differences but merely stated that its "contention of infringement is based upon the facts that [Plaintiff] obtained the exclusive distributorship . . . of the brands at issue" and that Defendant's "distribution of the branded products constituted infringement." *Id.*

The Court concludes that these facts sufficiently establish a lack of material difference between Plaintiff's and Defendant's products, such that the burden shifts to Plaintiff to show "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Notably, Plaintiff does not dispute the lion's share of Defendant's facts concerning the infringement claim. *See generally* Pltf. Statement of Genuine Disputes. Plaintiff does not identify any material difference in the packaging and appearance of the products. Pltf. Statement of Genuine Disputes 21. Plaintiff acknowledges "there is no difference" in the "tast[e]" of the parties' respective products. Opp. 5. And Plaintiff concedes that "there is no concern [about] the safety and quality of . . . [the] products" sold by Defendant. Dkt. No. 32-18 ¶ 5.[1]

The sole argument Plaintiff raises to avoid summary judgment is that Defendant's products are "materially different" because they violate "the [U.S.] import entry requirements." *Id.*; *see also* Opp. 9. Plaintiff contends that Defendant's products lack "veterinary certificates" mandated by the U.S. Department of Agriculture (USDA) and cannot be imported into the United States legally. Opp. 3-4. But in making this argument, Plaintiff fails to cite any authority or provide any significant analysis. *See id.* Instead, Plaintiff offers little more than "bare assertions," which are "insufficient to . . . defeat a motion for summary judgment." *G&C Auto Body Inc v. Geico Gen. Ins. Co.*, 552 F. Supp. 2d 1015, 1018 (N.D. Cal. 2008).

---

[1] At the hearing, Plaintiff conceded specifically that there are no safety issues or quality issues with Defendant's products.

Nor does Plaintiff provide much evidence to satisfy its burden, though it is required to present "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 ("If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."). Plaintiff provides a declaration from a manager of one of the Chinese manufacturers, indicating that Plaintiff's milk is sourced from New Zealand and Australia and Defendant's milk is sourced from China. Dkt. No. 32-18 ¶ 4. According to the manager, Defendant's milk products lack the "veterinary certificate[s]" required by the USDA for importing into the United States. *Id.* ¶ 6. This declaration may show the milk sourcing is different, but Plaintiff does not provide any authority, evidence, or explanation that the country of origin of the milk-based ingredients is a material consideration for consumers. *Cf. Hokto Kinoko*, 738 F.3d at 1094-95 (holding mushrooms imported from Japan were materially different because they were grown under lesser quality control standards and sold in packaging designed for domestic Japanese consumers). If anything, the declaration suggests otherwise, stating that the difference in the milk product's origin does not raise any concern about "safety" or "quality" (Dkt. No. 32-18 ¶ 5), and the taste of the products is the same (Opp. 5).

At bottom, Plaintiff's Opposition relies entirely on its position that there is a difference in the products' "compl[iance] with U.S. import entry requirements." Dkt. No. 32-18 ¶ 5. And despite this reliance, Plaintiff provides no legal analysis demonstrating the purported noncompliance. Instead, Plaintiff provides a short declaration from a business manager of a Chinese corporation, who offers a conclusory legal opinion about USDA requirements and procedures. *Id*. Such conclusory assertions, made without proper foundation, are not enough to establish the products' illegality. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

Next, Plaintiff provides two "veterinary certificates" issued to Plaintiff by a manufacturer, certifying that the "milk/milk products are sourced from New Zealand or Australia or U.S.A." Dkt. No. 32-5. But two veterinary certificates possessed by Plaintiff for its own products do not demonstrate illegality on the part of Defendant. Moreover, these certificates come months after the time period relevant to this case and do not appear to be related to the products at issue, as Defendant notes. Reply 9.

Finally, Plaintiff provides two "Emergency Action Notifications" showing that the USDA seized two shipments of Defendant's products in August and September of 2019. Dkt. No. 32-6. These form documents state only that certain products would be destroyed because they "made entry into the United States without meeting entry requirements" set out by federal regulations. *Id.* Without more, these forms are not "significantly probative" so as to defeat summary judgment. *Cf. Anderson*, 477 U.S. at 248. They contain little information about the circumstances of the seizures and refer only to violations of the "entry requirements" of 9 C.F.R. § 94, Dkt. No. 32-6 . They are silent as to what entry requirements within this comprehensive regulation were breached.[2] At the hearing, Plaintiff's counsel conceded the reason for the violation was not specific on the face of the notice.

Plaintiff also fails to link the problems with these two shipments with the products that were successfully imported and sold in the United States. Plaintiff's sole justification for defeating summary judgment is that Defendant's products were illegal for import. But that notion is undercut by the fact that all the *sold* products (i.e., all the products that gave rise to the allegedly infringing conduct) appear to have been imported legally. Indeed, Defendant offers evidence that no other shipment or product was ever seized, and that all sold products cleared customs without issue. Dkt. Nos. 36-4 (Xiuqing Lin Supp. Decl.) (stating all other "shipments of the Products at Issue" were "legally imported, and passed customs inspection"); 36-5 (providing multiple U.S. Customs and Border Entry Summary Documents showing products clearing customs). Plaintiff, by contrast, offers no theory, evidence, or explanation for why these purportedly illegal products were successfully imported. In fact, the only evidence that addresses the question is a declaration from one of Plaintiff's managers, who has "no knowledge as [to] how [Defendant] was able to import" its products. Dkt. No. 32-17 (Xiaoqing Ling Decl.) ¶ 3. At the hearing, Plaintiff's counsel suggested these products may have

---

[2] Though the grant of summary judgment turns on the Plaintiff's failure to meet its burden, the Court notes that Defendant makes a persuasive showing in reply that the regulation at issue does not apply to most (if not all) of its products. Three of the products at issue do not contain milk at all. Dkt. No. 36-4 (Xiuqing Lin Supp. Decl.) ¶ 2. Defendant also seeks judicial notice of USDA guidance documents showing there is no certification requirement for "[f]ormulations containing dry milk products." Dkt. Nos. 36-6 (RJN), 36-7, 36-8. Defendant notes at least four of the milk teas at issue appear to fall under this exception. Dkt. No. 36-4 (Xiuqing Lin Supp. Decl.) ¶ 3. This request for judicial notice is **GRANTED**.

"slipped through the cracks" and accidentally been allowed to enter, but also conceded this argument was entirely speculative.

Even if Plaintiff's evidence tended to show Defendant's products breached an import regulation, Plaintiff offers no rationale for why these breaches would be something "a consumer is likely to consider . . . relevant when purchasing a product." *Hokto Kinoko*, 738 F.3d at 1092. To be sure, a federal violation may be material to consumers, particularly if there was some nexus to health, safety, or quality. Yet Plaintiff disclaims any "safety" or "quality" concerns with Defendant's products. Dkt. No. 32-18 ¶ 5. The sole difference between the products at issue is their purported compliance with U.S. import regulations, and Plaintiff does not explain why Defendant's failure to adhere to the regulations would cause confusion among or be significant to consumers. Thus, Plaintiff has made no showing on the "key question" in infringement cases like this one. *Hokto Kinoko*, 738 F.3d at 1092. Without such a showing, the Court is left with only two sets of products that Plaintiff admits are materially the same in terms of packaging, taste, quality, safety, and seemingly every other important aspect. Consequently, it appears undisputed that Defendant's products do "not materially differ from the U.S. trademark owner's product[s]," such that "trademark law does not extend to [their] sale." 738 F.3d at 1093.

In the end, this case comes down to the burden of proof. Defendant made a sufficient showing to shift the burden to Plaintiff to show "specific facts" that "under the substantive law of the case" might affect the outcome of the case. *G&C Auto Body*, 552 F. Supp. 2d at 1018. In response, Plaintiff offered briefing that offered little in the way of evidence, authority, or explanation. Though the amount in controversy is relatively small—Plaintiff contends Defendant made less than $25,000 in profit from these sales—Plaintiff was still required to provide an opposition with adequate citations to evidence and legal authority. Summary judgment is proper because Plaintiff failed to do so. Therefore, the Court **GRANTS** Defendant's motion for summary judgment as to the trademark infringement claim.

Defendant also moves for summary judgment as to Plaintiff's unfair competition claim, noting the standards are identical to those of the trademark infringement claim. MSJ 1 ("Because summary judgment is appropriate on its claim for trademark infringement, summary judgment is also appropriate on Plaintiff's claim for unfair competition, which is predicated on its failed trademark claim."). Plaintiff does not mention this claim in its opposition. "The standard for Lanham Act trademark infringement is the same as for Lanham Act unfair

competition and California state claims for trademark infringement and unfair competition." *Luxottica Grp., S.p.A. v. Eye Story, Inc.*, No. 2:18-CV-3374-CAS-GJS, 2020 WL 2404913, at *3 (C.D. Cal. May 11, 2020); *see Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (holding an "unfair competition claim fails because its related Lanham Act claims fail"). Thus, the Court also **GRANTS** Defendant's motion for summary judgment as to the unfair competition claim.

## III. APPLICATION TO FILE UNDER SEAL

Separately, Plaintiff requests to file various items of evidence under seal because they contain sensitive business data, like its costs and sales figures. Dkt. No. 33. Generally, "'compelling reasons' must be shown to seal judicial records attached to a dispositive motion." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). But "'[s]ources of business information that might harm a litigant's competitive standing' often warrant protection under seal." *Grundig Multimedia AG v. Eton Corp.*, No. 20-CV-05206-NC, 2021 WL 411237, at *6 (N.D. Cal. Feb. 5, 2021). Here, the Court has reviewed the information filed under seal and concludes it sufficiently sensitive business information that may harm Plaintiff's competitive standing if disclosed. Moreover, the Court notes the information was unnecessary to the resolution of this motion. Thus, the Court **GRANTS** the application to file under seal.

## IV. CONCLUSION

For these reasons, Defendant's motion for summary judgment is **GRANTED** in its entirety. Any evidentiary objections not addressed in this order were not considered and are accordingly **DENIED AS MOOT**.

**IT IS SO ORDERED**.

0/20