1  Jen-Feng Lee, SBN 204328
2  jflee@ltpacificlaw.com
   Kenneth K. Tanji, Jr., SBN 162273
3  ktanji@ltpacificlaw.com
4  **LT Pacific Law Group, LLP**
   17800 Castleton Street, #560
5  City of Industry, CA 91748
6  T: 626-810-7200
7  F: 626-810-7300

8  Attorneys for Plaintiff
9  OCM GROUP USA INC.

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  OCM GROUP USA INC.                    Case No. 2:19-CV-08917-SB (KSx)

15          Plaintiff,                    **Plaintiff's Opposition and**
                                          **Memorandum of Points and**
16      vs.                               **Authorities responding to**
                                          **Defendant's Motion for Attorney**
17                                        **Fees (ECF #48)**
18  LIN'S WAHA INTERNATIONAL
    CORP, a New York corporation; and
19  DOES 1 - 10,
20                                        Date:   7/23/2021
            Defendants.                   Time:   8:30 am
21                                        Ctrm:   6C
22

23

24

25      Plaintiff, OCM Group USA, Inc. ("OCM" or Plaintiff), via counsel,

26  respectfully present this Opposition to Defendant Lin's Waha's Motion for

27  Attorney Fees, filed as ECF #48.

28
_____

Plaintiff's Opposition to Defendant's Motion for Attorney Fees, ECF #48

1

1

2

### I.      Procedural History of This Motion

Conference of counsel took place on May 27, 2021. The (initial) motion was filed on June 2, 2021, ECF #45.

The ECF #45 motion violated L.R. 7-3: the conference must happen at least 7 days before motion filing.

June 2, 2021 was the 6th day; the conference of counsel was one day late.

The Court struck down the ECF #45 motion filing, but allowed refiling with a provision that the "refiling is otherwise timely".

Defendant then re-filed that same motion as ECF #48.

The refiled ECF #48 motion failed L.R. 54-7, which provides that attorney's fee motion must be filed within 14 adays after the entry of judgement.

June 9, 2021 is six days past the 14-day deadline. Arguably, it is not "otherwise timely".

Plaintiff nevertheless substantively responded to the re-filed ECF #48 motion.


### II.      The Gist of Why This Is Not An Exceptional Case

Defendant Lin's Waha International Corp ("LW" or Defendant) obtained a favorable summary judgment ruling of non-infringement, in a trademark case brought by Plaintiff OCM Group USA Inc. ("OCM" or Plaintiff).

LW thus is the prevailing party.

The issue to be decided in this motion is: whether this is an exceptional case under 15 U.S.C. §1117 where the prevailing party is entitled to reasonable attorney fee, in light of the facts below:

a. During relevant times, OCM is the U.S. exclusive distributor of certain trademarked products manufactured by Xiang Piao Piao Food Co. Ltd. ("XPP", a Chinese corporation) and licensee of certain XPP trademarks registered with United States Patent and Trademark Office ("USPTO").

b. OCM, in the shoes of the trademark owner XPP, has the right to file trademark infringement action in the U.S. against unauthorized sellers/merchants.

c. The XPP products sold by OCM and sold by LW are different[1].

d. OCM's XPP branded products used milk components sourced from New Zealand or Australia; XPP only allows this version of products to be sold to U.S. market, and via the OCM exclusive distributorship.

e. LW's XPP branded products used milk components sourced domestically within China. These China-domestic version products have no safety concern; nor would consumers detect any taste difference from the OCM version (using Australia or New Zealand milk component); but XPP only allows such domestic version to be distributed within China.

f. Importing the China domestic version to U.S. for resales violates U.S. import entry regulations set and enforced by USDA/APHIS (U.S. Department of Agriculture/Animal Plant Health Inspection Services).

g. The evidence of LW's illegal importation (the seizure/destruction notices of LW products, citing to 9 C.F. R. §94) is unrefuted. See Exhibit 4, filed as ECF #32-6.

---

[1] Of the 9 drink products at issue, a minority of them (3 out of 9) did not contain milk components sourced differently as noted below.

h. Plaintiff's litigation activities are reasonable and proportional to the stake at hand when the likely recovery is the $24K disgorgement of Defendant's profit; although Plaintiff also presented damages theory of loss profit of $86K.

i. XPP/OCM would file infringement action against other sellers/merchants given the same/similar fact pattern (unauthorized sales, evidence of illegal entry as noted by the seizure notices, etc.) as noted in ¶8 of Mo Declaration.

If the Court pleases, these facts should be sufficient to deny Defendant's motion and find that the advocacy activities taken by Plaintiff to be reasonable in light of the circumstances.

The Court is certainly welcome to delve more into the facts and arguments stated below and confirm that this is not an exceptional case.

## III.      Plaintiff's Litigation Activities Are Reasonable

A trademark owner has the right to control how/where its products are distributed. As such, there is nothing wrong for OCM, in the shoes of the trademark owner XPP, to file suit against LW.

No court would fault OCM for its enforcement actions to stop unauthorized merchants from selling the XPP branded products in U.S.

OCM's sent out cease-and-desist notices and file suit, if necessary. See ¶1 in Plaintiff's Counsel Declaration[2].

Shortly after filing suit, some discovery efforts were spent on OCM's standing based upon OCM's asserted exclusivity. Though by end of discovery, OCM's standing (the exclusive distributorship) was no

---

[2] OCM retained a different law firm, Blue Capital Law Firm, in Costa Mesa, CA, to write a first cease-and-desist letter to LW prior to filing suit.

longer disputed. See ¶¶ 2,3 in Counsel Declaration and ¶1 in Mo Declaration.

Not long after the discovery opened, Plaintiff learned that LW's sales were rather limited, resulting in LW making $24K profit as shown/computed in documents produced by LW. Parties engaged in settlement talks early, seeking to avoid spending legal fees that are likely unjustified.

Based upon the sales of the XPP branded products sold by LW, OCM also did its own computation for the Loss Profit damages theory. This computation came out to be around $82K.

OCM's litigation activities are driven by its business considerations of the ultimate amount at stake and the goal of stopping unauthorized sellers (selling the China domestic version), as noted in ¶¶4 - 6 of Counsel Declaration.

Throughout this litigation, it is always clear that LW, as the unauthorized seller of the XPP products and an infringer, would pay something to resolve this case.

The potential settlement numbers were between $10K and $20K, during direct settlement talks and assisted (twice) by Mediator Alan Kindred. See ¶¶7 – 11 of Counsel Declaration.

Settlement correspondence, though not admissible to prove the underlying liability or damages of the case, is admissible for other purposes. *Carney v. American University*, 151 F.3d 1090, 1095 (D.C. Cir. 1998).

After all the MSJ papers were filed, and in the week before the 3/5/2021 MSJ hearing, the direct communication between parties (via counsel) showed that LW was willing to pay some money, but with

substantially reduced amount due to its money already spent on legal fees; see ¶ 12 in Counsel Declaration.

Throughout this case, it has always been OCM's assessment that LW would need to pay some money to compensate for OCM's economic injury due to the sales of the unauthorized products and the disruption of OCM's exclusivity by LW.

Throughout this litigation, the "low damages" nature of this case was acknowledged by both counsel. It is surprising to OCM, after the Court's MSJ ruling in favor of LW, that this case suddenly became an $86K case, seemingly to justify the $67K legal fees sought by LW.

OCM's litigation activities are reasonable, not only in terms of the proportionality in view of the stake (damages amount provable with reasonable certainty), but also because OCM's litigation activities help to ensure the compliance with U.S. import regulation, particularly the USDA regulations related to milk components.

Such USDA's promulgation and enforcement of regulations are entitled to court's deference. ("[C]ourts grant deference to regulations promulgated, …, determined by the agency", *Oversight v. US Dept. of Justice,* 292 F.Supp.3d 501, 506; U.S.D.C. Distr. Columbia, 2018).

Saying it another way, to find this case being an exceptional case would encourage illegal importation activities.

## IV.   Defendant's "Word Salad" Arguments

Defendant sought to "reverse engineer" an exceptional case, by relying solely on a Word Salad approach:  cherry-picking phrases from the Court's MSJ ruling and tried to spin a case of exceptionality.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

If an exceptional case can be made solely by the "word salad" approach from a ruling, there is no more real "exceptional case" determination.

Plaintiff is not refuting the proposition that in an exceptional case, the prevailing party is entitled to reasonable attorney fees, as expressed in the seminal (patent) cases of *Octane Fitness v. ICON Health & Fitness*, 572 US 545 (2014).

None of the cases cited by LW, however, would support the conclusion that this is an exceptional case for purpose of awarding reasonable attorney fees to LW, given the facts of this case.

Defendant cited to the case of *Amusement Art, LLC v. Life is Beautiful, LLC*, 2017 WL 2259672 (C.D. Cal, 2017) to fit the "almost no evidence" phrase. This is inconsistent with the fact of this matter: unrefuted evidence of LW's illegal import and evidence of LW being the unauthorized seller.

The *Gucci Am, Inc. v. Pieta*, 2005 WL 4725707 (C.D. Cal, 2006) case does not help LW because the fee is awarded to the prevailing Plaintiff.

The *Sunearth, Inc. v. Sun Earthe Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) case is inapplicable because the fee is awarded to the prevailing Plaintiff.

The *ThermoLife Int'l v. Myogenix Corp*, 2017 WL 1235766 (S.D. Cal 2017) is a patent case. The facts are not helpful to Defendant LW.

The *Sazerac Company, Inc. v. Fetzer Vineyars, Inc.* (2017 WL 6059271; N.C. Cal. 2017) case did award fees to prevailing defendant, but the finding of exceptionality is that plaintiff proceeded to trial with zero evidence that it was harmed in any way, with the only remedy being injunctive relief. In the OCM's case, there is either $24K disgorgement

1

2

damages, or Defendant's now-admitted $86K lost profit claim from OCM that it tried to fend off.

3

4

5

6

In the *Kolay Flooring Int'l c. Milikwn & Co. (*2019 WL 3059276; C.D. Cal. 2019) case, the Defendant was awarded attorney fees only for Plaintiffs' inunction motion that was filed without evidence of irreparable harm (and failed to respond to Defendant's request for amendment).

7

8

9

10

11

12

13

14

15

The *Secalt S.A. v. Wuxi Shenxi Contr. Mach. Co. Ltd*., 668 F.3d 677; 9th Cir. 2012) case is about Plaintiff's ridiculous assertion of trade dress on certain machine configuration. The Court found that the alleged trade dress, other than unsupported or conclusory claims about the product design, there is really no protectable trade dress right. Contrasting the facts of this case, the XPP trademarks are federally registered, entitled to legal presumption of validity. The OCM standing to enforce is not disputed and the evidence of LW illegality is undisturbed. LW received no help from this *Secalt S.A.* case.

16

17

18

The *Dzinesquare, Inc. v. Armano Luxury Alloyes, Inc.* (2015 U.S. Dist. LEXIS 178443; C.D. Cal. 2015) similarly is about plaintiff's failure to even show protectable trade dress right.

19

20

21

The *Nutrivita Labs v. VBS Distribution, Inc.*, 160 F.Supp.3d 1184 (C.D. Cal. 2016) is also a trade dress case. The Court denied the motion for fees.

22

23

24

The Court in the *Delta Forensic Engineering v. Delta V Biomechanics, Inc.*, 2021 WL 243323 (C.D. Cal. 2021) denied the Lanham Act motion for fees.

25

26

27

In the *Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000) case, the fees are awarded to the trademark owner side (i.e., the XPP/OCM side, not the accused infringer side).

28

None of the cases cited by Defendant would support, not even remotely, that this case is an exceptional case.

## V.      Policy Reasons of Exceptionality Are Not Achieved

In the *Octane Fitness v. ICON Health* case, the Supreme Court noted the policy reason for finding exceptional case and awarding attorney fees is to "advance considerations of compensation and deterrence".

Given the facts of this case where (1) OCM is the exclusive distributor, and (2) LW is the unauthorized seller that encroached into OCM's exclusive right and caused some damages (if liability proven, the amount would be $86K as LW's ECF #48 filing admitted; although the $24K disgorgement damages seems to be more reasonably certain), and (3) there is clear and undisturbed evidence of illegality, the **deterrence goal** fails because if there are other sellers importing XPP's domestic product to U.S. for sales, violating the exclusivity grant, XPP/OCM would not hesitate to file suit, especially if there is evidence of illegality determined by a federal agency such as USDA; see ¶8 in Mo Declaration.

As to the **goal of compensation**, it strains credulity to have a Court compensate the unauthorized seller whose importation of the disputed products (despite ruled to be free from liability due to first sale doctrine) is illegal as evidenced by the seizure notices re violation of import regulations. It strains credulity to have a Court punish a party whose business operation and litigation activities are done to protect legitimate trademark interest and in compliance with the law.

**<u>Conclusion</u>**

There is no wrongfulness for OCM, in the shoes of the trademark owner, to file suit in court.

Throughout the case, OCM's advocacy and litigation activities reflected its assessment of the case merits.

OCM's litigation activities are further justified by the amount at stake.

Finding this case to be exceptional and awarding fees to Defendant LW goes against the policy of *Octane Fitness* because there is no deterrence and it does not make sense to give compensation to the law-breaker.

The Court is respectfully requested to deny the ECF #48 motion.


Dated:   July 2, 2021                                    Respectfully Submitted,


<u>/s/Jen-Feng Lee</u>

Jen-Feng (Jeff) Lee
Attorney for Plaintiff
    OCM GROUP USA INC.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing documents with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on July 2, 2021; the document(s) identified as:

**Plaintiff's Opposition and Memorandum of Points and Authorities responding to Defendant's Motion for Attorney Fees (ECF #48)**

**Plaintiff's Counsel Declaration;**

**Declaration of XuHua Mo;**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF System.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2021

/s/ Jen-Feng Lee
Jen-Feng Lee