Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
Erin C. Witkow (SBN 216994)
ew@witkowlaw.com
Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel:   818.296.9508
Fax:   818.296.9510

Attorneys for Defendant
LIN'S WAHA INTERNATIONAL CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCM GROUP USA INC.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>LIN'S WAHA INTERNATIONAL CORP, a New York corporation; and DOES 1-10.<br><br>                    Defendant. | Case No. 2:19-cv-08917 SB (KSx)<br><br>**DEFENDANT LIN'S WAHA INTERNATIONAL CORP.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br><u>**Hearing**</u>:<br><br>Date:  July 23, 2021<br>Time:  8:30 a.m.<br>Ctrm:  6C |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................. 1

II.  PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE WHY AN
     AWARD OF ATTORNEYS' FEES IS IMPROPER ................................. 2

     A.   Plaintiff Admits That Its Case Has No Substantive Merit ......... 2

     B.   Plaintiff Litigated This Case in an Unreasonable Manner ......... 5

     C.   Plaintiff's Opposition Fails to Demonstrate That Defendant's
          Requested Fees are Unreasonable ................................ 10

     D.   Defendant's Motion is Not Procedurally Improper ................ 11

III. CONCLUSION .............................................................. 13

1

# TABLE OF AUTHORITIES

2   **<u>Cases</u>**                                                                        **<u>Page(s)</u>**

3   *AF Holdings LLC v. Navasca,*
4       2013 WL 3815677 (N.D. Cal., July 22, 2013) ................................................. 10

5   *Amusement Art,*
6       2017 WL 2259672 (C.D. Cal. 2017) ............................................................ 3

7   *Bakver v. Baker,*
        2018 WL 6190597 (C.D. Cal. Aug. 31, 2018) .............................................. 10
8
9   *Hibler v. Santander Consumer USA, Inc.,*
        2013 WL 12137716 (C.D. Cal., Nov. 21, 2013) ............................................ 12
10
11  *Hokto Kinoko Co. v. Concord Farms, Inc.,*
        738 F.3d 1085 (9th Cir. 2013).................................................................. 3, 5
12
13  *Kolay Flooring Int'l, LLC v. Milliken & Company,*
        2019 WL3059276 (C.D. Cal. March 6, 2019)......................................................... 4
14
15  *Malave v. City of Los Angeles,*
        2018 WL 5816097 (C.D. Cal. July 25, 2018) ................................................ 8
16
    *Octaine Fitness, LLC v. ICON Health & Fitness, Inc.,*
17      572 U.S. 545 (2014)................................................................................ 3
18  *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.,*
        668 F.3d 677 (9th Cir. 2012) ................................................................... 4
19
20  *SunEarth, Inc. v. Sun Earth Solar Power Co.,*
        839 F.3d 1179 (9th Cir. 2016) .............................................................. 3, 5
21
22  *ThermoLife Int'l, LLC v. Myogenix Corp.,*
        2017 WL 1235766 (S.D. Cal. Apr. 4, 2017................................................... 3
23
24  *Wilson-Condon v. Allstate Indem. Co.,*
        2011 WL 3439272 (C.D. Cal. Aug. 4, 2011) ................................................ 12

25  **<u>STATUTES</u>**

26  Fed. R. Evid. 408(a) ............................................................................... 7, 8

27

28

**MOTION FOR PARTIAL SUMMARY JUDGMENT/SUMMARY JUDGMENT**

# I.    INTRODUCTION

Defendant Lin's Waha International Corp. ("Defendant") is entitled to an award of attorneys' fees against Plaintiff OCM Group USA Inc. ("Plaintiff") because this case truly is one that "stands out from others," making it an exceptional case under Section 1117 of the Lanham Act.  This case stands out because Plaintiff filed - and continued to pursue this lawsuit - without ever bothering to understand basic concepts of trademark law and without ever bothering to obtain evidence to support its claims. Namely, Plaintiff has continuously insisted — even now — that because it allegedly is an exclusive licensee, it is vested with the absolute right to stop "unauthorized sellers" from selling foreign-made versions of its products in the United States.  That simply is not the law.  Rather, as the Court recognized in granting summary judgment, regardless of whether Defendant is "unauthorized," it *can* legally sell foreign-made products in the United States, unless they are "materially different" from those products sold by Plaintiff under the same trademarks.  As explained in Defendant's Motion for Attorneys' Fees (the "Motion"), Defendant put Plaintiff on notice of its defense in its Joint Report filed in February 2020 [Dkt. No. 15, p. 3; Declaration of Brandon J. Witkow in support of Motion f ("Witkow Decl."), ¶ 5], and Defendant provided Plaintiff with evidence demonstrating that Defendant was purchasing genuine products in China as early as March 2020, a fact which Plaintiff acknowledged back in March 2020. [Witkow Decl., ¶ 5 and Exh. 1.]  Yet, despite having knowledge of this defense since the beginning of this case, Plaintiff persisted in its lawsuit, making no effort to obtain any evidence disputing this defense while at the same time demanding significant damages.  Ultimately, Defendant was required to bring its motion for summary judgment, and, not surprisingly, Plaintiff's opposition to this motion failed to provide any evidence of "material differences" between the products at issue, relying instead on "bare" and "conclusory" assertions, as this Court noted repeatedly in its Order Granting Defendant's Motion for Summary Judgment [Dkt. No. 38] (the "Summary Judgment Order").

One would think that Plaintiff would learn that mischaracterizing the law and refusing to spend time and resources to obtain actual evidence is not the way to litigate a matter.  But here we are once again.  In opposing the Motion here, Plaintiff continues to claim that it has the "right" to stop Defendant from selling its products in the United States simply because it is an "exclusive distributor," and it relies entirely on the conclusory and insufficient assertions this Court rejected on summary judgment. Put simply, at no point in this litigation has Plaintiff made any effort to obtain evidence to support its allegations, *i.e.*, evidence of any material difference between the products.  Plaintiff's counsel attempts to justify Plaintiff's lackadaisical approach to this litigation by explaining that Plaintiff "has no reason to 'throw good money after bad'" if Plaintiff realistically could recover "only" $24,000. (Declaration of Jen-Feng Lee ("Lee Decl."), ¶ 6) [Dkt. No. 51-1].  While that may be well and good, Plaintiff nonetheless forced Defendant to defend against a trademark infringement action in which Plaintiff actually sought over $80,000, knowing that it did not have any evidence to demonstrate a violation of the Lanham Act.  Unlike Plaintiff, Defendant did not have the luxury of "treading this litigation lightly." (*Id.*)  Defendant was forced to expend $66,780 to defend against these baseless claims, and Plaintiff should be held accountable.

Furthermore, Plaintiff has made it clear in its Opposition that it has every intention of filing future lawsuits against Defendant and anyone else who attempts sell products for which it has an exclusive license in the United States, with no mention of the existence of material differences.  Plaintiff cannot be permitted to repeatedly file lawsuits against parties based on a misunderstanding (whether intentional or not) of the law and when Plaintiff has no intention of spending the time and money to obtain evidence to support its claims.  Because Plaintiff's case had no substantive strength, and because Plaintiff's conduct in pursuing this action based on nothing more than conclusory assertions was unreasonable, Defendant respectfully

**REPLY ISO MOTION FOR ATTORNEYS' FEES**

requests that this Court grant the instant Motion and award Defendant its reasonable attorneys' fees.

## II. PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE WHY AN AWARD OF ATTORNEYS' FEES IS IMPROPER.

### A. Plaintiff Admits That Its Case Has No Substantive Merit.

As explained in Defendant's Motion, "an 'exceptional' case is simply one that stands out from others." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014); *see also Sunearth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179, 1181 (9th Cir. 2016); *Amusement Art,* 2017 WL 2259672, at *3 (referring to *Octane Fitness* as a "more relaxed standard[ ]").  A case may be "exceptional" or "stand out from others" either "with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) ***or*** the unreasonable manner in which the case was litigated." *Id.; ThermoLife Int'l, LLC v. Myogenix Corp*., 2017 WL 1235766, at *3 (S.D. Cal. Apr. 4, 2017).

In its Opposition, Plaintiff fails to offer ***any*** explanation of either the substantive strength of its case or the reasonableness of its litigation conduct.  As to the substantive strength of its case, Plaintiff argues – with no evidentiary or legal support whatsoever – that it has "the right to file trademark action [sic] in the U.S. against unauthorized sellers/merchants[,]" and that the "XPP branded products sold by OCM and sold by LW are different" because the products use different "milk components."  (Opposition to Motion for Attorneys' Fees ("Opp."), 3:1-26).  As it has done throughout this litigation, Plaintiff ignores well-settled trademark law, as well as its burden in both opposing summary judgment and a motion for attorneys' fees.  Specifically, Plaintiff does *not* have the absolute right to file trademark actions in the United States against unauthorized sellers of foreign-made products. Rather, trademark law is clear that even an unauthorized seller of foreign-made products cannot be liable for trademark infringement when there are no "material differences" (*i.e*., differences that would impact a consumer's purchasing decision) between the

products at issue.  *See e.g., Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1092-93 (9th Cir. 2013).  Thus, regardless of whether Defendant is unauthorized, it can only be liable under the Lanham Act if there are "material differences" between the domestic and foreign products sold by the parties.

As the Court explained in granting summary judgment in Defendant's favor, Plaintiff failed to provide *any* evidence of "material differences" between the products.  [Docket No. 38, pp. 4-8].  Instead, Plaintiff offered nothing more than "conclusory" and "bare" assertions regarding a purported difference in milk ingredients, which was unsupported by any evidence or actually contradicted by a declaration submitted by Plaintiff.  [*Id.,* p. 5] ("Plaintiff does not provide any authority, evidence, or explanation that the country of origin of the milk-based ingredients is a material consideration for consumers," and "[i]f anything, the declaration suggests otherwise, stating that the difference in the milk product's origin does not raise any concern about 'safety' or 'quality' (Dkt. No. 32-18 ¶ 5), and the taste of the products is the same").

Here, as with its summary judgment opposition, Plaintiff attempts to establish the "substantive strength" of its claim by asserting in its Opposition unsupported, conclusory claims that milk ingredients are "different." (Opp., 3:26).  Yet, at the same time, Plaintiff once again concedes in its Opposition that the "China-domestic version products have no safety concern; nor would consumers detect any taste difference from the OCM version." (*Id.,* 3:15-17).  Thus, by Plaintiff's own admission there are no "material differences" between the products, and there is absolutely no substantive strength to Plaintiff's case.  While Plaintiff may cling to the erroneous belief that it is entitled to sue unauthorized sellers of products that are in no way materially different from its own products, that simply is not the law.  Plaintiff cannot be permitted to concoct its own legal standard and force parties to defend actions that it *admits* have no substantive merit under the *actual* law.  Indeed, such conduct is the precise scenario under which courts find the award of attorneys' fees warranted.  *See e.g.,*

witkow|baskin

1  *Kolay Flooring Int'l, LLC v. Milliken & Company,* 2019 WL 3059276, at *1, *8 (C.D.

2  Cal. March 6, 2019) (finding plaintiff's trademark case to be "exceptional" when

3  plaintiff relied only on "bare assertions and conclusory statements") (*citing Secalt*

4  *S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.* 668 F.3d 677, 688 (9th Cir. 2012)

5  (affirming district court's finding of an exceptional case where the plaintiff "failed to

6  provide the court with any evidence that there were debatable issues of law and fact"

7  and "at best offered either unsupported or conclusory claims"), *abrogated on other*

8  *grounds by SunEarth,* 839 F.3d at 1181.[1]

9  **B.  Plaintiff Litigated This Case in an Unreasonable Manner.**

10  As explained above, Plaintiff *concedes* that there is no evidence of any material

11  differences between the products at issue, yet it pursued this action through the

12  summary judgment phase based on the *entirely erroneous* contention that it is

13  absolutely "entitled" to sue unauthorized sellers of genuine products (despite the fact

14  that the law does not impose liability on such parties).   As explained in Defendant's

15  summary judgment motion and opening brief here, Plaintiff *admitted* in discovery

---

[1] Plaintiff's Opposition also claims Plaintiff's case had substantive strength because "[i]mporting the China domestic version to U.S. for resales [sic] violates U.S. import entry regulations set and enforced by USDA/APHIS (U.S. Department of Agriculture/Animal Plant Health Inspection Services). (Opp., 3:20-26).  Once again, this Court rejected this precise argument on summary judgment, holding: "Even if Plaintiff's evidence tended to show Defendant's products breached an import regulation, Plaintiff offers no rationale for why these breaches would be something "a consumer is likely to consider ... relevant when purchasing a product." *Hokto Kinoko*, 738 F.3d at 1092. To be sure, a federal violation may be material to consumers, particularly if there was some nexus to health, safety, or quality. Yet Plaintiff disclaims any 'safety' or 'quality' concerns with Defendant's products. Dkt. No. 32-18 ¶ 5. The sole difference between the products at issue is their purported compliance with U.S. import regulations, and Plaintiff does not explain why Defendant's failure to adhere to the regulations would cause confusion among or be significant to consumers. . . .  **Consequently, it appears undisputed that Defendant's products do 'not materially differ from the U.S. trademark owner's product[s],' such that 'trademark law does not extend to [their] sale**.' 738 F.3d at 1093." [Dkt. No. 38, p. 7] (emphasis added).

that the products sold by Defendant were genuine, and Plaintiff failed in discovery to identify evidence of *any differences* between the products at issue (much less material differences), despite being put on notice of this defense in the parties' Joint Report in February 2020.   Yet, Plaintiff nonetheless continued to pursue this action. Furthermore, when the parties met and conferred regarding the substance of Defendant's anticipated summary judgment motion, Plaintiff again provided no evidence of any material differences between the products at issue and forced Defendant to expend the time and resources to move for summary judgment.  Even when faced with the motion itself, as this Court repeatedly noted throughout its Summary Judgment Order, Plaintiff provided absolutely no evidence to demonstrate any material differences between the products and offered nothing more than conclusory and speculative assertions.  At no time over the course of this action did Plaintiff provide any competent evidence of any material differences between the products at issue, nor did Plaintiff provide any legal authority to support its claims for trademark infringement or unfair competition.  Plaintiff made no effort to establish the reasonableness of its claims, and it continues this failure in opposing Defendant's Motion here.

Instead, Plaintiff criticizes Defendant's use of verbatim language from the Court's Summary Judgment Order, claiming that Defendant has "reverse engineered" an exceptional case by "cherry-picking phrases from the Court's MSJ ruling." For Defendant to "cherry-pick," however, there would need to be other undesirable or disadvantageous language in the Summary Judgment Order that Defendant chose to omit in its Motion. That is simply not the case.  The Court's Summary Judgment Order was clear that Plaintiff provided no evidence to support its claims, much less sufficient evidence to create a genuine issue for trial.  The Order did not contain any language discussing the substantive merit or reasonableness of Plaintiff's claims, which Defendant intentionally omitted in demonstrating the exceptionality of this case. And tellingly, while Plaintiff accuses Defendant of "cherry-picking" from the

**REPLY ISO MOTION FOR ATTORNEYS' FEES**

Summary Judgment Order, Plaintiff 's Opposition cites absolutely ***no language*** from that Order that supports its claim that this case is not exceptional.

Plaintiff also dedicates two full pages of its Opposition to "distinguishing" the cases relied on by Defendant in its Motion, yet Plaintiff does not provide any actual explanation as to how these cases are inapplicable.  For example, Plaintiff claims that cases are "inapplicable" simply because fees were awarded to the plaintiff (not the defendant) or because the case involved patent or trade dress claims.  (Opp., 7:8-9:2). Needless to say, these are distinctions without a difference, and Plaintiff's claim that "none of the cases cited by Defendant" support a finding of exceptionality is flat-out nonsensical.  Accordingly, Plaintiff has – once again – made no effort to provide this Court with any factual or legal basis for finding that its continued pursuit of meritless claims was reasonable.

Instead, Plaintiff attempts to establish the "reasonableness" of its litigation conduct by offering the Court a detailed description of settlement communications that took place informally and through two court-ordered mediations.  (Opp., 5:15-6:6; Lee Declaration, ¶¶ 7-12 [Dkt. No. 51-1]).  As a preliminary matter, Plaintiff's use of settlement offers from Defendant to prove the substantive strength of its case (and that it purportedly was reasonable for Plaintiff to pursue the case) is entirely inappropriate.   Under Federal Rule of Evidence 408, evidence of an offer to compromise a disputed claim is inadmissible "to prove or disprove the validity or amount of a disputed claim . . . ."  *See* Fed. R. Evid. 408(a).  That is precisely what Plaintiff is attempting to do here.  Namely, Plaintiff is arguing that its claims were valid (and thus, its litigation conduct was reasonable) because Defendant offered a sliver of money to settle those claims.  (*See* Opp., 5:15-20 ("Throughout this litigation, it is always clear that LW, as the unauthorized seller of the XPP products and an infringer, would pay something to resolve this case.  The potential settlement numbers were between $10K and $20K . . . ."); *see also* Opp., 5:25-6:2 ("After all the MSJ papers were filed, and in the week before the 3/5/2021 MSJ hearing, the direct

communication between the parties (via counsel) showed that LW was willing to pay some money, but with substantially reduced amount due to its money already spent on legal fees . . . .")).   Plaintiff also improperly relies on statements made by Defendant's counsel during settlement negotiations to claim that counsel "appeared not to challenge the liability" of Defendant. (Lee Decl., ¶ 8 [Dkt. No. 51-1]).  Plaintiff notes in its Opposition that settlement communications can be admissible for "other purposes," but it fails to explain how these settlement communications fall within one of the exceptions outlined in Federal Rule of Evidence 408 (Opp., 5:21-24).  That is because they do not.  It is without question that Plaintiff is using them to prove the validity of its claims (which are no doubt disputed); thus, such communications are inadmissible.  Fed. R. Evid. 408(a); *see also Malave v. City of Los Angeles*, 2018 WL 5816097, at *4 (C.D. Cal. July 25, 2018) ("[t]he City's evidence of these statements is inadmissible [in connection with motion for attorneys' fees] because they were made during settlement negotiations and are proffered here to either 'prove or disprove the validity ... of a disputed claim'").

Even assuming the settlement offers made by Defendant were not inadmissible, they do nothing to demonstrate the reasonableness of Plaintiff's litigation conduct. Plaintiff concedes that Defendant offered, *and Plaintiff accepted*, a settlement offer of $10,000; however, Plaintiff later refused this offer, and then subsequently demanded double that amount, when the mediator himself suggested that Plaintiff accept a much lower amount. (Lee Decl., ¶¶ 10-11 [Dkt. No. 51-1]).  After briefing on the summary judgment motion was closed, Plaintiff demanded an even higher amount from Defendant.  (*Id.,* ¶ 12).  Thus, Plaintiff – *knowing it had no evidence of any material differences between the products at issue* – admits it walked away from a settlement, and then continued to demand increasingly higher amounts, despite the mediator's advice to the contrary.

Plaintiff also argues that its continued pursuit of these claims was reasonable because its "litigation activities help to ensure the compliance with U.S. import

regulation, particularly the USDA regulations related to milk components," and USDA enforcement of regulations are "entitled to court deference." (Opp., 6:11-21). Plaintiff even goes so far as to say that "to find this case being [sic] an exceptional case would encourage illegal importation activities." (*Id.*). This is precisely the type of conclusory, unsupported claim that led to Court's entry of summary judgment against Plaintiff.  Plaintiff does not provide any support for its claim that this lawsuit in any way "helps ensure compliance with U.S. import regulations" and, frankly, one has absolutely nothing to do with the other.  Indeed, this Court already dismissed evidence that the two of Defendant's shipments were seized by the USDA as irrelevant in its Summary Judgment Order, finding as follows with respect to the seizure documents relied on by Plaintiff:

> These form documents contain little information about the circumstances of the seizures and refer only to violations of the 'entry requirements.' They are silent as to what entry requirements within this comprehensive regulation were breached. At the hearing, Plaintiff's counsel conceded the reason for the violation was not specific on the face of the notice.
>
> Plaintiff also fails to link the problems with these two shipments with the products that were successfully imported and sold in the United States. Plaintiff's sole justification for defeating summary judgment is that Defendant's products were illegal for import. But that notion is undercut by the fact that all the sold products (i.e., all the products that gave rise to the allegedly infringing conduct) appear to have been imported legally. Indeed, Defendant offers evidence that no other shipment or product was ever seized, and that all sold products cleared customs without issue . . . ."

[Dkt. No. 38, p. 6].   Thus, Plaintiff's argument that awarding attorneys' fees for its unreasonable litigation conduct would "encourage illegal importation activities" is nothing more than rank speculation.

Finally, Plaintiff argues that an award of attorneys' fees would not serve the goals of deterrence and compensation because "XPP/OCM would not hesitate to file

9

suit" "if there are other sellers importing XPP's domestic products to U.S. for sales [sic], violating the exclusivity grant . . . ."  (Opp., 9:13-17).  This statement is yet another reason why an award of attorneys' fees is warranted.  Once again, Plaintiff is either intentionally ignoring the law or is engaging in willful ignorance of what conduct is and is not permitted under the Lanham Act.  Plaintiff refuses to understand or acknowledge that authorized sales of foreign-made products ***are legal*** – even if by unauthorized sellers – if there are no material differences between the foreign-made and domestic products. And it is clear from such statements that Plaintiff will not hesitate to file lawsuit after lawsuit against any party who is selling products in the United States for which Plaintiff is the exclusive distributor – without bothering to investigate and obtain evidence of material differences between the products, as Plaintiff failed to do in this case.  This is ***not*** a legitimate attempt to protect trademark interests, but rather an improper attempt to strong-arm third parties through threats of litigation and take more rights than what the Lanham Act affords.  If anything, an award of attorneys' fees is critical to force Plaintiff to acquire a basic understanding of trademark law, and to follow through those claims it chooses to assert by expending the time and effort to acquire evidence to support its allegations.  *AF Holdings LLC v. Navasca*, 2013 WL 3815677, at *3 (N.D. Cal., July 22, 2013) ("given AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements"); *Baker v. Baker*,  2018 WL 6190597, at *8 (C.D. Cal. Aug. 31, 2018) (awarding attorneys' fees given and holding that "it appears likely that without strong deterrence, Baker will continue his cavalier approach to litigation").

**C.    Plaintiff's Opposition Fails to Demonstrate That Defendant's Requested Fees are Unreasonable.**

As explained in Defendant's Motion, Defendant's counsel's hourly rate and the amount of time spent on this action were entirely reasonable. [Witkow Decl., ¶¶ 4, 6 and Exh. 2-3]. Indeed, Plaintiff' Opposition does not object to the hourly rate charged or time spent by Defendant's counsel, nor does Plaintiff take issue with the total amount of fees sought by Defendant. Plaintiff's only reference to the amount of fees sought by Defendant is in connection with Plaintiff's claim that the amount of damages sought by Plaintiff was "low"; thus, Plaintiff purportedly was "surprised" that the "case suddenly became an $86K case, seemingly to justify the $67K fees sought by [Defendant]." (Opp., 6:8-10). It is unclear what point Plaintiff is trying to make with this assertion, particularly since Plaintiff *repeatedly* conceded in its Opposition to Defendant's Motion for Attorneys' Fees that it was seeking lost profit damages of approximately $82,000, even though Defendant's alleged profits were only $24,000[2]. (Opp., 4:1-4; 5:8-10, 6:10, 8:1, 9:11). While Plaintiff may now admit the case was "low damages," at no point during the litigation did Plaintiff back down from its claim of $82,000 in lost profits; thus, Defendant certainly was justified in expending the time and resources to take discovery and move for summary judgment. Further, to the extent Defendant now characterizes this case as "low damages" of $24,000, Plaintiff's admission in its Opposition that it walked away from a $10,000 settlement offer only highlights the unreasonableness of its litigation conduct.

Given that this is an exceptional case, that Defendant's alleged fees are reasonable, and that Plaintiff does not object to the amount sought, Defendant respectfully requests that the Court award Defendant its attorneys' fees.

## D.   Defendant's Motion is Not Procedurally Improper.

Plaintiff argues in its Opposition that Defendant's Motion is untimely and/or procedurally improper. This Court entered Judgment on May 21, 2021. [Dkt. No.

---

[2] Plaintiff's Opposition repeatedly refers to its lost profits damages calculation of "$86K" (Opp., 4:4, 9:11; 8:1, 6:10), while at other times referring to lost profits of $82,000 (Opp., 5:10). In actuality, Plaintiff claimed $82,000 in lost profit damages, not $86,000.

11

44].  Thus, under Local Rule 54-7, Defendant was required to move for attorneys' fees no later than June 4, 2021.  *See* L.R. 54-7.  As explained in Defendant's Motion, Defendant's counsel initiated the pre-motion conference of counsel pursuant to Local Rule 7-3 on May 27, 2021, by sending Plaintiff's counsel a detailed email outlining Defendant's position and legal support for its motion.  (Witkow Decl., at ¶ 2; Supplemental Declaration of Brandon J. Witkow in support of Motion for Attorneys' Fees, ¶ 2).  Plaintiff's counsel then responded on June 1, 2021, and Defendant's counsel then conferred telephonically with Plaintiff's counsel regarding the Motion on June 2, 2021, during which time Plaintiff's counsel indicated Plaintiff's intent to oppose the Motion.  (*Id.*)  Plaintiff's counsel followed up on that telephonic conference the same with an email to Defendant's counsel further indicating Plaintiff's opposition to the anticipated Motion.  (*Id.*)  Given that the parties had engaged in significant meet and confer regarding the Motion and were unable to resolve the matter informally, Defendant filed the Motion on June 2, 2021, with a requested hearing date of July 23, 2021, more than 7 weeks later.  (*Id.*).  In light of the July 23, 2021 hearing date, Plaintiff had over four weeks to prepare its Opposition to the Motion, which Plaintiff filed on July 2, 2021.  [Dkt. No. 51].  Plaintiff does not contend that the parties did not adequately meet and confer in advance of the filing of Defendant's Motion, nor does Plaintiff argue that it was in any way prejudiced by the filing of Defendant's Motion on June 2, 2021 (six days after the parties initiated their meet and confer).

To the extent that Plaintiff is arguing that this Motion should be denied because it was filed six (rather than seven) days after the parties began their extensive meet and confer discussions, any such contention should be rejected, as Plaintiff has had ample time to prepare and file its Opposition to the Motion and has in no way been prejudiced.  *Hibler v. Santander Consumer USA, Inc.,* 2013 WL 12137716, at *4 (C.D. Cal., Nov. 21, 2013) (holding that responding party did not suffer any prejudice from moving party filing motion six days after meet and confer, as opposed to seven,

as parties met and conferred and responding party was able to file an opposition); *Wilson-Condon v. Allstate Indem. Co.*, 2011 WL 3439272 at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3").[3]

## III.  CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court award it attorneys' fees in the amount of $66,870.

Dated: July 9, 2021                              Respectfully submitted,

witkow | baskin

By: */s/* Brandon J. Witkow
Brandon J. Witkow

Attorneys for Defendant LIN'S WAHA INTERNATIONAL CORP.

---

[3] Plaintiff also appears to contend that Defendant's Motion is untimely because the Court ordered Defendant to refile the Motion with a proposed order.  This assertion is nonsensical, as the Motion was filed timely (two days in advance of the Local Rule 54-7 deadline), Court specifically noted that it was striking the Motion "without prejudice to refiling," and the Motion was re-filed the same day the Court issued its Order. [Dkt. Nos. 47-48].

13